# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2281

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Grant Armin Berry, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  January 11, 2000

Filed:  May 4, 2000

_____

Before BOWMAN and LOKEN, Circuit Judges, and ALSOP,[*] District Judge.

_____

LOKEN, Circuit Judge.

In September 1998, St. Louis police officers discovered significant quantities of crack cocaine and powder cocaine while searching Grant Armin Berry's residence and vehicle.  Berry pleaded guilty to two counts of possessing crack and powder cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  Berry now appeals his

_____

[*]The HONORABLE DONALD D. ALSOP, United States District Judge for the District of Minnesota, sitting by designation.

262-month sentence, challenging the district court's[1] finding that two prior sentences were unrelated to one another for purposes of determining his criminal history category under U.S.S.G. § 4A1.2. The resulting two criminal history points placed Berry in criminal history category III, with a Guidelines sentencing range of 210-262 months. If the prior sentences were related, Berry would be in criminal history category II, his Guidelines range would be 188-235 months, and he would receive the applicable mandatory minimum sentence of 240 months under 21 U.S.C. § 841(b)(1)(A), unless the district court were to depart upward under U.S.S.G. § 4A1.3. We affirm.

The two prior sentences arose as follows. In December 1996, police officers saw Berry throw down a small bag containing what was later identified as crack cocaine. Berry fled to escape arrest, but a warrant search of his home uncovered drug paraphernalia and crack cocaine, and an arrest warrant issued. In November 1997, police officers executing a warrant to search the residence of Berry's uncle stopped Berry as he was leaving the residence and found crack cocaine on his person. The arrest warrant was still outstanding, and Berry was charged with drug trafficking on both occasions in two separate cases. He pleaded guilty to both felony charges in state court and was given concurrent suspended sentences plus two years' probation. The issue is whether those two sentences are "related" under § 4A1.2.

Section 4A1.2(a)(2) provides that "[p]rior sentences imposed in unrelated cases are to be counted separately" in computing a defendant's criminal history for sentencing purposes. Application Note 3 defines the term "related cases." Prior sentences are always unrelated "if they were for offenses that were separated by an intervening arrest." There was no intervening arrest in this case because Berry successfully avoided arrest in December 1996. When there has been no intervening arrest, Application Note 3 provides that "prior sentences are considered related if they

---

[1]The HONORABLE RODNEY W. SIPPEL, United States District Judge for the Eastern District of Missouri.

resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing."

The district court found Berry's two prior sentences were unrelated, noting that eleven months separated the offenses and they were uncovered during different police investigations. On appeal, Berry concedes his two prior offenses occurred on different occasions and were not consolidated for trial or sentencing. He argues the sentences were related because they "were part of a single common scheme or plan." We review the district court's finding on this issue for clear error. See United States v. Bartolotta, 153 F.3d 875, 879 (8th Cir. 1998), cert. denied, 119 S. Ct. 850 (1999).

Our prior § 4A1.2 decisions are uniformly contrary to Berry's position. For example, in United States v. Mau, 958 F.2d 234, 236 (8th Cir. 1992), we held that two drug sentences were unrelated, explaining:

> Mau first argues that his 1985 and 1986 offenses were part of a common scheme or plan because they both involved distribution of a controlled substance and they occurred within a one-year period. Mau's argument, however, would lead to the illogical result that a defendant who is repeatedly convicted of the same offense on different occasions could never be considered a career offender under the guidelines. As this court has noted, "[s]imilar crimes are not necessarily related crimes."

See also United States v. Maza, 93 F.3d 1390, 1400 (8th Cir. 1996), cert. denied, 519 U.S. 1138, and cert. denied, 520 U.S. 1160 (1997); United States v. Lowe, 930 F.2d 645, 647-48 (8th Cir. 1991).

Berry parries the thrust of these adverse precedents with a legal argument we have not previously considered. Our prior cases went astray, he argues, in failing to give the phrase "common scheme or plan" in Application Note 3 to § 4A1.2 the same meaning it has under the Guidelines' relevant conduct provision, U.S.S.G.

§ 1B1.3(a)(2).[2] We construe "common scheme or plan" in § 1B1.3(a)(2) quite broadly in determining relevant conduct for sentencing purposes. See, e.g., United States v. Geralds, 158 F.3d 977, 979 (8th Cir. 1998), cert. denied, 526 U.S. 1031 (1999) (similar drug transaction eighteen months before the offense of conviction was relevant conduct because "both transactions were part of a regular pattern of drug distribution"). Applying this broad definition of common scheme or plan to the related sentences issue under § 4A1.2, Berry argues that his two prior state court sentences involved a pattern of drug offenses sufficiently similar and close together in time to be considered related.

Some other circuits, like this court, have narrowly applied the "common scheme or plan" language in Application Note 3 to § 4A1.2 without discussing whether the term has the same or a different meaning in the two Guidelines contexts. See, e.g., United States v. Irons, 196 F.3d 634, 638-39 (6th Cir. 1999), and cases cited; United States v. Chapnick, 963 F.2d 224, 226-27 (9th Cir. 1992). Three circuits have noted that the term is used in both § 1B1.3 and § 4A1.2, without discussing whether the relevant conduct definition of "common scheme or plan" should be applied to broaden the universe of related sentences under § 4A1.2. See United States v. Cowart, 90 F.3d 154, 158-59 (6th Cir. 1996) (suggesting the § 1B1.3 definition "is certainly not binding"); United States v. Mullens, 65 F.3d 1560, 1565 (11th Cir. 1995), cert. denied, 517 U.S. 1112 (1996) (referring to § 1B1.3 but concluding offenses not related); United States v. Garcia, 962 F.2d 479, 481-82 (5th Cir.), cert. denied, 506 U.S. 902 (1992) (noting but not deciding the issue).

One panel of the Second Circuit expressly discussed the issue and found "no reason to conclude that [the term common scheme or plan] has a different meaning

---

[2]"For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 comment. (n.9).

when used in Section 1B1.3" and Section 4A1.2. United States v. LaBarbara, 129 F.3d 81, 86 (2d Cir. 1997). Berry relies primarily on LaBarbara. However, in that decision, the Second Circuit rejected defendant's claim that two offenses were related, rejected an argument that relevant conduct should be broadly construed for these purposes, and expressly followed a prior decision that narrowly construed common scheme or plan in Application Note 3 to § 4A1.2, see United States v. Chartier, 970 F.2d 1009, 1014-16 (2d Cir. 1992). Thus, while Berry can point to language in LaBarbara that supports his argument, we doubt whether the Second Circuit's approach to these § 4A1.2 issues differs significantly from our prior cases.

Only the Seventh Circuit has squarely addressed whether LaBarbara was right to suggest that the § 1B1.3 definition should guide the resolution of common-scheme-or-plan issues under § 4A1.2. The Seventh Circuit had long applied a restrictive definition of related sentences, similar to that applied in our prior cases:  prior sentences are unrelated absent proof that they "have been jointly planned, or at least that it have been evident that the commission of one would entail the commission of the other as well." United States v. Ali, 951 F.2d 827, 828 (7th Cir. 1992). In United States v. Joy, 192 F.3d 761, 771 n.7 (7th Cir. 1999), the court again applied this test, stating that it found LaBarbara "unpersuasive" and saw "no reason to depart from the settled law in this circuit." In addition, the Third Circuit has recently rejected Berry's argument that the definition of  "common scheme" in § 1B1.3 should apply in the career offender context, without referring to LaBarbara. See United States v. Beckett, __ F.3d __, 2000 WL 291413, at *6 n.2 (3d Cir. Mar. 21, 2000).

We agree with the Third and Seventh Circuits that the broad definition of "common scheme or plan" in Application Note 9 to § 1B1.3 is not suitable in determining whether sentences are "related" for purposes of § 4A1.2(a)(2).[3] In the first

---

[3]We note that the § 1B1.3 definition of "common scheme or plan" *is* relevant to another issue under § 4A1.2:  whether a previously imposed sentence punished

place, there is a significant textual difference in the two provisions: Application Note 3 to § 4A1.2 uses the phrase "*single* common scheme or plan." Addition of the word "single" suggests an intent to narrow the concept of "common scheme or plan." It points strongly in the direction of the Seventh Circuit's view that two prior offenses must have been *jointly* planned to be "related sentences" under § 4A1.2(a)(2).

This reading of the textual difference is reinforced when we consider the contexts in which the term "common scheme or plan" is being used. The underlying Guidelines determinations, relevant conduct and related sentences, "take different considerations into account and have different goals." Beckett, ___ F.3d at ___ n.2. On the one hand, § 1B1.3(a)(2) permits the sentencing court to consider a broader range of uncharged conduct for offenses, such as fraud and drug distribution, for which the total offense level is determined substantially on the basis of quantitative harm. For these offenses, "[r]elying on the entire range of conduct, regardless of the number of counts that are alleged or on which a conviction is obtained, appears to be the most reasonable approach to writing workable guidelines." U.S.S.G. § 1B1.3, comment. (backg'd). To meet this purpose, an illegal drug transaction eighteen months before the offense of conviction may well be relevant conduct.

On the other hand, the Guidelines take a defendant's criminal history into account because the goal of "deterr[ing] criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for

---

"conduct not part of the instant offense." § 4A1.2(a)(1) & comment. (n.1). This was the issue decided in LaBarbara and in United States v. Davidson, 195 F.3d 402, 408-09 (8th Cir.), cert. denied, 120 S. Ct. 1218 (2000). It ensures that the same prior conduct will not be "double counted" -- first as relevant conduct increasing the defendant's total offense level, and again as relevant criminal history that places the defendant in a higher criminal history category. By contrast, the "related sentences" issue we are considering in this case deals with the relationship of past crimes to each other, not to the offense of conviction. See Lowe, 930 F.2d at 648 n.10.

punishment with each recurrence." U.S.S.G. ch. 4, intro. comment. Once the relevant conduct determination has been made, so that prior sentences that were part of the instant offense have been excluded under § 4A1.2(a)(1), this deterrence goal is served by treating all but the most closely related prior sentences as distinct criminal violations under § 4A1.2(a)(2). As we said in Mau, 958 F.2d at 236, the inclusive standard for defining related sentences urged by Berry "would lead to the illogical result that a defendant who is repeatedly convicted of the same offense on different occasions could never be considered a [multiple] offender under the guidelines."

For these reasons, we adhere to our prior cases that construed and applied the term "single common scheme or plan" in Application Note 3 to § 4A1.2 without regard to the definition of "common scheme or plan" in Application Note 9 to § 1B1.3. Applying those cases, the district court's finding that Berry's two prior state court drug sentences were unrelated was not clearly erroneous. In Mau, we rejected a contention that the defendant's prior sentences were part of a single common scheme or plan simply because they both involved distribution of a controlled substance and occurred within a one-year period. Berry presented no additional evidence establishing any greater relationship between his prior drug offenses. Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.