# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2894

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Plaintiff-Appellee,　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of Minnesota.
Cordova Jamal Lynch,　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Defendant-Appellant.　*

_____

Submitted: January 9, 2007
Filed:  February 26, 2007

_____

Before MURPHY and SMITH, Circuit Judges, and READE,[1] District Judge.

_____

READE, District Judge.

Cordova Jamal Lynch pled guilty to one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  On appeal, Lynch contends that the district court[2] erred in calculating his advisory Sentencing Guidelines range and imposed an unreasonable sentence.  We affirm.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

[2]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

# I.

In June of 2005, law enforcement officers executed a search warrant at Lynch's home in Crystal, Minnesota, and found approximately 81 grams of powder cocaine and 11 grams of cocaine base. Pursuant to a plea agreement, Lynch pled guilty to one count of possession with intent to distribute powder cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). As part of the plea agreement, the parties agreed to litigate a number of sentencing issues, including whether Lynch qualified as a "career offender" under USSG § 4B1.1.

After an evidentiary hearing, the district court held that Lynch qualified as a career offender. The district court found that Lynch had two unrelated, prior felony assault convictions. In 1988, a Minnesota state court convicted Lynch of Second Degree Assault on two occasions.

At sentencing, Lynch moved for a downward departure pursuant to USSG § 4A1.3(b) for overstatement of criminal history and USSG § 5H1.4 in light of his physical condition. The district court denied the motion for a downward departure and calculated Lynch's advisory Sentencing Guidelines range to be 151 to 188 months of imprisonment.[3] After considering all of the factors at 18 U.S.C. § 3553(a),

---

[3]In the plea agreement, the parties attempted to calculate Lynch's possible advisory Sentencing Guidelines ranges. The parties agreed that Lynch would be a Criminal History Category VI, but they incorrectly estimated that a career offender finding would increase Lynch's total Offense Level from 23 to 28. Therefore, they assumed that, if the district court found that Lynch qualified as a career offender, his advisory Sentencing Guidelines range would be 140 to 175 months of imprisonment, and, if the district court found that Lynch did not qualify as a career offender, his advisory Sentencing Guidelines range would be 92 to 115 months of imprisonment. The United States Probation Office ("USPO") pointed out to the district court that the parties mistakenly calculated the possible advisory Sentencing Guidelines ranges. Rather than rely on a total Offense Level 28, the USPO correctly calculated that, as

however, the district court varied downward and imposed a sentence of 141 months of imprisonment.

Lynch appeals. He contends: (1) the district court erred in determining that he qualified as a career offender; (2) the district court should have departed downward; and (3) the district court failed to properly analyze the factors at 18 U.S.C. § 3553(a).

## II.

"A sentencing court must first determine the advisory [Sentencing] [G]uidelines range and then consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether to impose a sentence under the [Sentencing] [G]uidelines." United States v. Davis, 457 F.3d 817, 825-26 (8th Cir. 2006) (citing United States v. Haack, 403 F.3d 997, 1003 (8th Cir. 2005)). We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. United States v. Davidson, 437 F.3d 737, 739-40 (8th Cir. 2006) (citing United States v. Hadash, 408 F.3d 1080, 1082 (8th Cir. 2005)). We then review the sentence the district court imposed for reasonableness. Id. at 740.

## III.

### A.

Lynch argues that the district court erred in determining that he qualified as a career offender, because his two prior felony convictions were related and should not count separately. "Prior felony convictions are counted separately for career offender purposes if they 'are counted separately under the provisions of USSG § 4A1.1(a), (b),

_____

a career offender, Lynch's total Offense Level would be 29. A Criminal History Category VI and a total Offense Level 29 results in an advisory Sentencing Guidelines range of 151 to 188 months of imprisonment.

or (c).'" United States v. Mills, 375 F.3d 689, 691 (8th Cir. 2004) (quoting USSG § 4B1.2(c)).  "Prior sentences imposed in unrelated cases are to be counted separately," but "[p]rior sentences imposed in related cases are to be treated as one sentence . . . ."  USSG § 4A1.2(a)(2).

> Application Note 3 to USSG § 4A1.2 defines "related."  It states:
>> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

USSG § 4A1.2, cmt. (n.3).  In assessing whether the offenses were part of a single common scheme or plan, we consider (1) the time period, (2) the participants, (3) the victims, (4) the motive, (5) the modus operandi, (6) the location, (7) the offenses, (8) whether a common investigation uncovered the offenses and (9) whether the defendant jointly planned the offenses.  Davidson, 437 F.3d at 740 (citing Mills, 375 F.3d at 692 n.5).

The district court did not err when it found that Lynch's two prior convictions for Second Degree Assault were unrelated.  The following evidence is not disputed:

In April of 1988, a criminal complaint alleged that, on March 15, 1988, Lynch and a juvenile male were driving separate cars when they tried to block a third car. Lynch fired shots at the car and its two occupants.  In July of 1988, a separate criminal complaint alleged that, on March 14, 1988, Lynch engaged in similar conduct that involved three different victims and a different location.

Lynch went to trial on the first criminal complaint, which alleged the March 15, 1988 assault. At trial, the Minnesota state court permitted the prosecution to present evidence of the March 14, 1988 incident. The evidence was ostensibly admitted to show identity, modus operandi or a common scheme or plan.[4] A jury found Lynch guilty. In October of 1988, the Minnesota state court sentenced Lynch to ten years of imprisonment. Lynch subsequently pled guilty to the second complaint, and the Minnesota state court sentenced him to a consecutive term of three years of imprisonment.

The undisputed evidence shows that Lynch's two sentences are "unrelated" for purposes of USSG § 4A1.2. First, the sentences resulted from offenses that occurred on two different dates. Second, the offenses were not part of a single common scheme or plan. The offenses took place at different locations and involved different victims. Although the two assaults took place on consecutive dates and involved a similar modus operandi, "'a single common scheme or plan involves something more than simply a repeated pattern of conduct.'" Davidson, 437 F.3d at 740 (quoting United States v. Maza, 93 F.3d 1390, 1400 (8th Cir. 1996)); see also United States v. Joy, 192 F.3d 761, 771 (7th Cir. 1999) ("Crimes are not related . . . simply because they have a similar modus operandi," and "[n]either close temporal proximity nor the similar nature of two crimes requires a finding that the offenses were part of a common scheme." (Citations omitted.)). "'[S]imilar crimes are not necessarily related crimes.'" Mills, 375 F.3d at 693 (quoting United States v. Lowe, 930 F.2d 645, 647 (8th Cir. 1991)); see, e.g., United States v. Paden, 330 F.3d 1066, 1067-68 (8th Cir. 2003) (rejecting the defendant's argument that his two convictions, which stemmed from his use of the same firearm only four days apart, should be "functionally consolidated"

[4]The evidence was admitted pursuant to State v. Spreigl, 139 N.W.2d 167, 172-73 (Minn. 1965). In Minnesota, "[e]vidence of past crimes, frequently referred to as Spreigl evidence . . . can be admitted to show motive, intent, absence of mistake, identity, or a common scheme or plan." State v. Gomez, 721 N.W.2d 871, 877 (Minn. 2006) (citing Minn. R. Evid. 404(b) and Spreigl, 139 N.W.2d at 167).

for purposes of USSG § 4A1.2(a)(2) because the defendant pled guilty to both charges on the same date and the sentences ran concurrently). Third, the offenses were not consolidated for trial or sentencing. See United States v. Nicholson, 231 F.3d 445, 456 (8th Cir. 2000) ("Where prior convictions are sentenced under separate docket numbers, and there is no formal order of consolidation, the convictions are counted separately for purposes of USSG § 4A1.2(a)(2)." (Citation omitted.)).

Lynch stresses that the state prosecutor could have charged Lynch in the same instrument with both offenses and that the Minnesota state court held that evidence of the March 14, 1988 incident was admissible at his trial. Such considerations, however, are not binding upon our interpretation of the Sentencing Guidelines. See, e.g., United States v. Postley, 449 F.3d 831, 832 (8th Cir. 2006) (disregarding state legislature's characterization of an offense as an "aggravated misdemeanor," because it qualified as a "felony" under the advisory Sentencing Guidelines). We apply federal law, not state law, and we apply it to actual, not hypothetical, convictions.

In a related argument, Lynch contends that USSG § 4A1.1, § 4A1.2 and § 4B1.1 violate due process. Lynch contends that the Sentencing Guidelines are arbitrary, because they allow the district court to unpredictably "contradict" the Minnesota state court's apparent finding that the March 14 and March 15, 1988 incidents were part of a common scheme or plan. As a consequence, Lynch concludes that the Sentencing Guidelines lack definable standards. We disagree. There is no contradiction, because the two prosecutions involved different sovereigns. See, e.g., Heath v. Alabama, 474 U.S. 82, 89 (1985) (applying dual sovereignty doctrine and remarking that federal and state governments may separately prosecute and punish crimes) (citations omitted); see also United States v. Turpin, 920 F.2d 1377, 1388 (8th Cir. 1990) (holding that the mere fact that a defendant was subject to a harsher sentence in federal court than in state court did not implicate the due process clause). Further, the district court's decision was grounded in the Sentencing Guidelines' career offender provisions, which have definable standards. See, e.g., United States

v. Luersen, 278 F.3d 772, 774 (8th Cir. 2002) (rejecting an argument that an application of the career offender provisions of the Sentencing Guidelines was "unforeseeable," "unexpected" and "indefensible"); cf. United States v. Green, 902 F.2d 1311, 1313 (8th Cir. 1990) (holding that USSG § 4B1.1 survived a due process challenge, because it did not remove too much discretion from the sentencing judge).

Accordingly, we hold that the district court did not err when it found that Lynch qualified as a career offender under USSG § 4B1.1.

**B.**

Lynch argues that the district court should have departed downward pursuant to USSG § 4A1.3(b) and USSG § 5H1.4. "'The discretionary denial of a motion for downward departure is unreviewable unless the [district] court failed to recognize its authority to depart.'" United States v. Vasquez, 433 F.3d 666, 670 (8th Cir. 2006) (quoting United States v. Andreano, 417 F.3d 967, 970 (8th Cir. 2005)). The sentencing transcript reveals that the district court recognized its authority to depart from the Sentencing Guidelines but declined to exercise such authority. Therefore, the district court's denial of Lynch's motion for downward departure is unreviewable.

**IV.**

Lynch contends that the district court did not properly analyze the factors at 18 U.S.C. § 3553(a), and, therefore, his sentence is unreasonable. The record, however, shows that the district court analyzed the § 3553(a) factors. In its written statement of reasons, the district court explicitly considered all of the § 3553(a) factors in arriving at Lynch's sentence. "Nothing in § 3553(a) or in the Booker remedy opinion requires 'robotic incantations' that each statutory factor has been considered." United States v. Lamoreaux, 422 F.3d 750, 756 (8th Cir. 2005) (quoting United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005)).

In a similar claim, Lynch argues that the district court erred, because it treated the career offender portions of the Sentencing Guidelines as mandatory.  Lynch argues that the district court should have exercised discretion under Booker in the midst of its Sentencing Guidelines calculations to find that Lynch did not qualify as a career offender under USSG § 4B1.1.  Even in this post-Booker era, however, the district court must still consider the Sentencing Guidelines, and such "'consideration . . . will normally require determination of the applicable [Sentencing] Guidelines range.'"  Haack, 403 F.3d at 1002 (quoting Crosby, 397 F.3d at 113).  The district court did not resurrect the mandatory nature of the Sentencing Guidelines or violate Booker simply by calculating the Sentencing Guidelines range.  The district court clearly treated the Sentencing Guidelines as advisory.  Its downward variance belies any suggestion that it treated the Sentencing Guidelines as mandatory.[5]

## V.

Finding that Lynch's allegations lack merit, we affirm.

_____

---

[5] The propriety of the district court's downward variance is not at issue in this appeal.