# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————————

No. 06-3020

————————————

United States of America,

        Appellee,

v.

Ricardo Watkins, also known as
Mac,

        Appellant.

Appeal from the United States
District Court for the
Northern District of Iowa.

————————————

Submitted: January 8, 2007
Filed: May 29, 2007

————————————

Before COLLOTON and GRUENDER, Circuit Judges, and GOLDBERG, Judge.[1]

————————————

GRUENDER, Circuit Judge.

A jury found Ricardo Watkins guilty of conspiracy to distribute or possess with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 as well as distributing less than five grams of cocaine

———————————

[1]The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).  The district court[2] sentenced him to life in prison after denying his motion for a new trial.  Watkins appeals the denial of his motion for a new trial and his sentence.  We affirm.

## I.    BACKGROUND

From at least 1996 through the fall of 1999, Watkins regularly purchased crack cocaine from several different people in Illinois and arranged for it to be transported to and sold in Cedar Rapids, Iowa.  Watkins purchased distribution quantities of crack cocaine at intervals varying from twice per month to twice per week, depending upon demand.  During this time, Watkins used more than ten different people to help him cut, package, transport and sell the drugs.  Christopher Winters testified that he sold crack cocaine to Watkins several times in 1996 and regularly between the fall of 1997 and the fall of 1999.  He testified that he sold between 2.25 and 4.5 ounces of crack cocaine to Watkins on each occasion and once sold him 9 ounces of crack cocaine.  Alvin Davis testified that from the fall of 1997 into 1998 and again in 1999, he and Watkins bought crack cocaine in Chicago and transported it to Cedar Rapids, where they would provide the crack cocaine to others for sale on their behalf.  Davis testified that during this time period, Watkins would travel to Chicago usually twice each week to buy 4.5 ounces of crack cocaine on each trip.  Willie Herron, Dewayne Shears and Jessica Martley all testified that they had transported crack cocaine from Chicago to Cedar Rapids for Watkins and Davis, and Herron and Shears both sold crack cocaine in Cedar Rapids for Watkins and Davis.  In March 1998, a confidential informant working with police in the Cedar Rapids area purchased a "rock" of crack cocaine directly from Watkins and Davis for $100 ("the controlled purchase").

---

[2]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

In August 1998, fearing that he was under investigation, Watkins executed a proffer agreement with the United States Attorney's Office for the Northern District of Illinois ("the 1998 proffer agreement"). Watkins did not have legal counsel at the time. The agreement allowed the Government to use Watkins's proffered statements against him if he "should subsequently testify contrary to the substance of the proffer, or otherwise present a position inconsistent with the proffer." Pursuant to the agreement, Watkins provided incriminating information about his crack cocaine distribution in Cedar Rapids.

An Iowa federal grand jury indicted Watkins in October 1999 on the instant charges, and he was arrested in March 2005 in Illinois. The district court appointed counsel to represent Watkins. In June 2005, Watkins entered into a proffer agreement with the United States Attorney's Office for the Northern District of Iowa through his counsel ("the 2005 proffer agreement"), under the terms of which he again provided incriminating information regarding his distribution of crack cocaine in Cedar Rapids. Watkins's counsel believed that the 2005 proffer agreement only allowed the Government to use the proffered statements to impeach Watkins if he were to testify. However, the agreement actually provided that the information received during the proffer could be used, "to impeach your client's credibility and to focus questioning during cross-examination; for use in a rebuttal case against your client; to develop leads from the information provided; and for all other non-evidentiary purposes."

After a jury found him guilty on both counts, Watkins filed a motion for a new trial, alleging that the jury's verdict was contrary to the weight of the evidence and that his counsel was ineffective. The district court held an evidentiary hearing on the motion and created a substantial record on the ineffective assistance claims. In a lengthy, detailed opinion, the district court denied Watkins's motion for a new trial. Subsequently, the district court used the United States Sentencing Guidelines to determine an advisory sentence of life in prison based on an offense level of 43 and

criminal history category of III. The district court sentenced Watkins to life in prison. Watkins appeals the denial of his motion for a new trial and several sentencing issues.

## II.    DISCUSSION

### A.   New Trial

#### 1.      Weight of the Evidence

We review a district court's disposition of a motion for a new trial for an abuse of discretion. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). Where the motion asserts that the verdict is contrary to the weight of the evidence, "the court need not view the evidence in the light most favorable to the Government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Huerta-Orozco*, 272 F.3d 561, 565 (8th Cir. 2001) (quotation omitted). The district court should grant the motion only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred. *Id.* "Absent a clear and manifest abuse of discretion, we uphold the district court's ruling on a motion for a new trial." *Peters*, 462 F.3d at 957 (internal quotation omitted).

Watkins's argument that his convictions were contrary to the weight of the evidence focuses largely on the credibility of co-conspirator Alvin Davis's testimony. Davis testified pursuant to a plea agreement, hoping to receive a reduction in his own sentence. Davis testified that from late 1997 into 1998 and again for a period in 1999, he and Watkins purchased crack cocaine in Illinois, transported it to Cedar Rapids, and sold it there.[3] Watkins provides three examples illustrating his claim that Davis's testimony is unreliable. First, Davis testified that he and Watkins sold two rocks of

---

[3]Davis testified that he did not associate with Watkins for a period of time during 1998.

crack cocaine to the confidential informant for $100 in the controlled purchase. (His testimony established that he and Watkins typically sold 0.5 gram rocks of crack cocaine for $50 each.) However, the officer involved with the controlled purchase testified that the confidential informant purchased a single rock of crack for $100. The confidential informant did not testify. Second, although Davis testified to the details of the controlled purchase at Watkins's trial in 2005, Davis claimed that he could not recall details of the controlled purchase at his own plea hearing in 1999. Finally, Davis testified at Watkins's trial that he and Watkins made $1,500 to $2,000 per week selling crack cocaine, but in a proffer statement that he made in 2000, Davis asserted that they made $1,000 to $1,500 per week. In addition, Watkins attacks the credibility of the other co-conspirator witnesses who testified pursuant to agreements with the Government, urging that such testimony is generally unreliable.

While there may be some discrepancies and inconsistencies in Davis's testimony, these examples fall short of establishing that Watkins's convictions were contrary to the weight of the evidence. The testimony of seven witnesses corroborated Davis's central story that he and Watkins purchased significant quantities of crack cocaine in Chicago and directed sales of crack cocaine in Cedar Rapids. The record also demonstrates that Watkins's counsel cross-examined all of the cooperating witnesses, exposing details of relevant cooperation and plea agreements, and attempted to impeach them with prior criminal convictions. *See United States v. Crenshaw*, 359 F.3d 977, 988 (8th Cir. 2004) ("Testimony does not become legally unsubstantial because the witness stands to gain by lying; the defendant is entitled to cross-examine such witnesses to expose their motivations, and it is up to the jury to decide whether the witness is telling the truth despite incentives to lie."); *United States v. Baker*, 367 F.3d 790, 798 (8th Cir. 2004) ("The fact that these witnesses testified in exchange for the possibility of reduced sentences does not categorically make their testimony infirm or require that their testimony be corroborated in order to support a conviction."). Further, in its detailed ruling on Watkins's motion for a new trial, the district court cited Davis's testimony and that of the other cooperating witnesses,

implicitly finding the testimony credible. *See United States v. Johnson*, 462 F.3d 815, 820 (8th Cir. 2006). We have previously declined to second-guess a district court's credibility assessment in similar circumstances. *See United States v. Judon*, 472 F.3d 575, 583 (8th Cir. 2006). Consequently, we find that the district court did not abuse its discretion in crediting the testimony of these witnesses. The evidence adduced at trial does not weigh so heavily against the verdict that we believe that a miscarriage of justice may have occurred, *see Huerta-Orozco*, 272 F.3d at 565, and we affirm the district court's denial of Watkins's motion for a new trial.

## 2. Ineffective Assistance of Counsel

Although ineffective-assistance-of-counsel claims typically are best raised in collateral proceedings under 28 U.S.C. § 2255, disposition on direct appeal is appropriate "[w]hen the claim does not turn on information outside of the district court record." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005). In this case, the district court conducted a full hearing on the ineffective assistance claims raised by Watkins in his motion for a new trial, which included testimony from Watkins's trial counsel.

"[W]e review the district court's ruling on a motion for a new trial based on a claim of ineffective assistance of counsel for abuse of discretion." *United States v. Villalpando*, 259 F.3d 934, 938 (8th Cir. 2001). Under the Supreme Court's well-established standard in *Strickland v. Washington*, a convicted defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. 466 U.S. 668, 687 (1984). To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . . [T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 693, 695.

Watkins argues first that his counsel was ineffective for failing to call Odessa Watkins, defendant's mother, to testify at trial. "The decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy . . . ." *Staples*, 410 F.3d at 488. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation omitted). Counsel testified that he had discussed Odessa Watkins's potential testimony with the defendant and that they agreed not to call her to testify at trial. At the hearing on Watkins's motion for a new trial, Odessa Watkins testified that although she believed that Watkins was employed in the 1997 to 1999 time frame, she had a full-time job and could not verify his whereabouts sufficiently to exculpate him. Further, her testimony would have corroborated trial testimony that Watkins was acquainted with both Christopher Winters and Alvin Davis during the relevant time period. Because Odessa Watkins's testimony was potentially damaging and would not have exonerated Watkins, counsel's decision not to call her to testify at Watkins's trial was not objectively unreasonable. *Id*. at 688. In any event, Odessa Watkins's proffered testimony is insufficient to show a reasonable probability that, but for counsel's decision not to call her, the outcome of the trial would have been different; so Watkins has also failed to show prejudice. *Id*. at 694. We therefore find no abuse of discretion in the district court's determination that Watkins's counsel was not ineffective by failing to call Odessa Watkins to testify at her son's trial.

Watkins also argues that his counsel was ineffective for failing to call Betty Taylor, Donjeola Barker and Marvin Lumpkins as witnesses at trial.[4] Counsel's uncontroverted testimony was that he had never heard of these witnesses, and Watkins does not argue that counsel should have independently discovered them. Counsel's failure to call these witnesses was therefore not deficient. *See Battle v. Delo*, 19 F.3d 1547, 1555 (8th Cir. 1994) (holding that counsel was not deficient in failing to call a witness where the defendant never provided the witness's name to counsel and no evidence existed that counsel had any notice of the witness's identity). Because counsel's failure to call these witnesses was not deficient, we find no abuse of discretion in the district court's determination that Watkins's counsel was not ineffective by failing to call them to testify at Watkins's trial.

Watkins next argues that his counsel was ineffective because he failed to vigorously cross-examine Davis and Robert Watkins, Jr., Watkins's brother, both of whom testified for the Government pursuant to plea agreements. Although counsel did cross-examine both witnesses, Watkins points out that counsel failed to impeach Davis with his prior inconsistent statements and failed to cross-examine Robert Watkins, Jr. about prior inconsistent statements and a particular event that might have generated animus in him towards Watkins. Because Watkins's counsel impeached both witnesses with their plea agreements and felony convictions, any impeachment with prior inconsistent statements would have been cumulative. *See, e.g., Hall v. Luebbers*, 296 F.3d 685, 694 (8th Cir. 2002). Further, Watkins's counsel thoroughly examined Robert Watkins, Jr. on his relationship with his brother and motivations for

---

[4]Watkins argued before the district court that counsel was ineffective for failing to call twenty other witnesses as well. Because Watkins neither names nor discusses these twenty witnesses in his briefs on appeal, he has abandoned on appeal his ineffective assistance claim with respect to counsel's failure to call those witnesses. *See* Fed. R. App. P. 28(a)(9)(A); *United States v. Eldeeb*, 20 F.3d 841, 843 (8th Cir. 1994) ("[A] party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue.") (quotation omitted).

testifying. As the district court noted, "it is very difficult to show the trial outcome would have been different had specific questions been asked on cross examination," particularly where other trial testimony repeatedly corroborated the testimony of these two witnesses. "In hindsight, there are few, if any, cross-examinations that could not be improved upon. If that were the standard of constitutional effectiveness, few would be the counsel whose performance would pass muster." *Willis v. United States*, 87 F.3d 1004, 1006 (8th Cir. 1996). The district court found that Watkins failed to show prejudice arising from counsel's cross-examination of these witnesses, and we find no abuse of discretion in the district court's ruling on this issue.

Next, Watkins argues that his counsel was ineffective for failing to object to the admissibility of the lab report which identified the rock obtained by the Government in the controlled purchase as crack cocaine. Watkins argues that the admission of this lab report into evidence without the testimony of its author violated his Sixth Amendment confrontation right.[5] Even if we assume for the sake of argument that counsel's performance was deficient and that he could have ultimately prevented the admission of the lab report, Watkins has failed to show any prejudice. "It is well established that the identity of a controlled substance can be proved by circumstantial evidence and opinion testimony." *United States v. Covington*, 133 F.3d 639, 644 (8th Cir. 1998) (internal quotation omitted). "A fact finder may rely on the observations

_____

[5]The district court admitted the lab report during the testimony of the police officer involved in the controlled purchase as evidence that the rock was crack cocaine. Though that officer submitted the rock obtained in the controlled purchase to the lab, there is no evidence that the officer was involved in the lab testing or the reporting of the results. Since the lab report's author did not testify, the lab report itself was almost certainly inadmissible hearsay. The parties' briefs reveal nothing regarding the absence of the lab report's author. However, we note that the Government's pretrial memorandum stated that Watkins had stipulated to the admission of the lab report. We are unable to locate in the record any such stipulation or any indication that Watkins disagreed with the Government's assertion that the parties had so stipulated.

of those familiar with crack cocaine when it makes findings regarding the identity of the drug in question." *United States v. Hawthorne*, 235 F.3d 400, 405 (8th Cir. 2000). "[W]e note that among the most knowledgeable experts on crack are those who regularly smoke it or sell it. . . . The verdict of the marketplace is strong confirmation that [the defendant] was selling genuine crack." *United States v. Brown*, 156 F.3d 813, 816 (8th Cir. 1998). None of the testimony adduced at trial suggested that Watkins was dealing in forms of cocaine other than crack cocaine. One co-conspirator testified that he smoked some of the crack that he transported on behalf of Watkins. Another witness testified that he smoked crack cocaine obtained from Watkins, that it was "a decent quality," and that it gave him the same effect as other crack cocaine he had smoked. With respect to the rock obtained during the controlled purchase, both Alvin Davis and the officer involved identified it as crack cocaine. There is simply no evidence to the contrary. With this record evidence, Watkins has failed to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Because Watkins has failed to show any prejudice arising from the admission of the lab report, we find that the district court did not abuse its discretion in its ruling that counsel did not provide ineffective assistance in failing to object to its admission into evidence.

Watkins also argues that his counsel was ineffective based on incorrect advice regarding the consequences of the 2005 proffer agreement. At the time of the proffer, counsel advised Watkins that the Government could only use the proffered information against him if he testified at trial. As the language of the proffer agreement made clear, though, the Government was entitled to use the proffered information "in a rebuttal case against your client." Fearing that he would open the door to the Government's use of Watkins's incriminating proffer statements in a rebuttal case, Watkins's counsel decided not to present a witness who might have otherwise testified on Watkins's behalf in an effort to undermine the credibility of three of the Government's witnesses. The district court found that counsel's advice

about the consequences of the 2005 proffer agreement was deficient but went on to find that Watkins failed to prove that the erroneous advice prejudiced him. The single witness that counsel would have presented would have offered, at best, tenuous impeachment testimony against three of the Government's fourteen witnesses. As the district court explained, in light of the totality of the evidence presented in the Government's case-in-chief, Watkins failed to establish a reasonable probability that the outcome of his trial would have been different but for the erroneous advice. *See Strickland*, 466 U.S. at 695 (holding that in determining prejudice, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury"). Moreover, Watkins was also subject to the 1998 proffer agreement. Like the 2005 proffer agreement, the 1998 agreement allowed the Government to use Watkins's proffered statements against him in rebuttal. Since Watkins's proffered statements under both agreements detailed his involvement selling crack cocaine in Cedar Rapids in the late 1990s, the 1998 proffer agreement alone would have had the same effect even without counsel's bad advice regarding the 2005 proffer agreement.[6] Because Watkins was not prejudiced by his counsel's erroneous advice regarding the 2005 proffer agreement, we find no abuse of discretion in the district court's ruling on this issue.

In sum, the district court did not abuse its discretion when it denied Watkins's motion for a new trial based upon claims of ineffective assistance of counsel.

## B. Sentencing Issues

"A sentencing court must first determine the advisory Sentencing Guidelines range and then consider the factors set forth in 18 U.S.C. § 3553(a) to determine

---

[6]Watkins argues that he did not knowingly and voluntarily enter into the 1998 proffer agreement and that he was therefore not bound by its terms. However, the only evidence in the record shows that Watkins feared that he was under investigation and voluntarily initiated contact with Chicago-area law enforcement that led to his 1998 proffer agreement. Consequently, we reject his argument.

whether to impose a sentence under the Sentencing Guidelines." *United States v. Lynch*, 477 F.3d 993, 995-96 (8th Cir. 2007) (internal alterations and quotation omitted). "We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. We then review the sentence the district court imposed for reasonableness." *Id.* at 996 (citations omitted).

### 1.      Request for Expert Witness

After trial but prior to sentencing, Watkins requested a court-funded expert to perform a chemical analysis on the rock of cocaine obtained by the Government through the controlled purchase. *See* 18 U.S.C. § 3006A(e). Watkins argues that the district court erred by denying this request and that had an appointed expert succeeded in demonstrating that the rock was not actually crack cocaine, then the district court would have had to assess the entire drug quantity found at sentencing as powder cocaine, which warrants a less severe advisory sentencing range than crack cocaine under the guidelines.

We review the district court's refusal to appoint an expert for abuse of discretion, and Watkins must show prejudice. *United States v. Obasi*, 435 F.3d 847, 852 (8th Cir. 2006). "The defendant bears the burden of demonstrating that these services are necessary to an adequate defense and must show a reasonable probability that the requested expert would aid in his defense." *United States v. Mentzos*, 462 F.3d 830, 839 (8th Cir. 2006) (internal citations and quotation omitted), *cert. denied*, --- U.S. ---, No. 06-10067 (Apr. 16, 2007).

Because there is nothing in the record suggesting that the rock was anything other than crack cocaine, Watkins has failed to show a reasonable probability that an expert would have aided his sentencing defense. "[A] trial court need not authorize an expenditure under [§ 3006A(e)] for a mere 'fishing expedition' . . . ." *United States v. Schultz*, 431 F.2d 907, 911 (8th Cir. 1970). Further, as the district court explained, an expert could have opined only with respect to the single rock recovered

by the Government from the controlled purchase. However, at sentencing the Government sought to hold Watkins responsible for more than 1.5 kilograms of crack cocaine on the basis of trial testimony establishing that Watkins distributed multiple kilograms of crack cocaine over a period of several years. Thus, Watkins has also not shown that expert testimony regarding the rock from the controlled purchase was necessary for his defense at sentencing. Because Watkins has shown neither necessity nor a reasonable probability that an expert would have aided his defense at sentencing, we find that the district court did not abuse its discretion by denying Watkins's request for an expert.

### 2. Drug Quantity

Watkins argues that the district court erred in computing the quantity of drugs for which he was responsible under the sentencing guidelines. "We review a district court's drug quantity findings for clear error." *Judon*, 472 F.3d at 584. Watkins challenges the district court's use of a preponderance of the evidence standard for its factual findings at sentencing in order to preserve the issue, conceding that the preponderance standard is proper under current Eighth Circuit precedent. *See id*. The district court may estimate drug quantities so long as the estimate is supported by a preponderance of the evidence. *Id*. Relying upon the trial testimony, the district court found that Watkins was responsible for, "conservatively," 1.5 kilograms of crack cocaine. The district court noted, "I believe it to be much higher, but I – I am confident in that figure." Indeed, at trial, Christopher Winters testified that in 1996, he sold crack cocaine to Watkins six or seven times in quantities ranging from 2.25 to 4.5 ounces. This testimony supports a finding that Watkins purchased at least 13.5 ounces of crack cocaine from Winters in 1996. Winters also testified that between the fall of 1997 and the fall of 1999, he sold crack cocaine to Watkins, again in 2.25 to 4.5 ounce quantities, "a couple times a month." Conservatively, this supports a finding that Watkins purchased 108 ounces of crack cocaine in that time period. Thus, the trial testimony supports a drug quantity finding of 121.5 ounces of crack cocaine

attributable to Watkins, which is equal to more than 3.4 kilograms.[7] It certainly was not clear error for the district court to attribute 1.5 kilograms of crack cocaine to him. Under § 2D1.1(c) of the guidelines, 1.5 kilograms or more of crack cocaine warrants a base offense level of 38.

### 3. Using a Minor To Commit a Crime

Watkins argues that the district court erred by assessing a two-level enhancement under § 3B1.4 of the sentencing guidelines for using a minor to commit a crime. At trial, Willie Herron testified that he sold crack cocaine on behalf of Watkins in 1996, when Herron was only 16 years old. The district court's finding based on this testimony is not clearly erroneous, and the district court properly applied the two-level enhancement for using a minor to commit a crime in computing Watkins's advisory sentencing range.

### 4. Other Enhancements

Watkins also challenges the district court's application of guidelines enhancements for an aggravating role in the offense under § 3B1.1 and for obstructing justice under § 3C1.1. Watkins argues that the district court erred in finding that he was an organizer or leader of a criminal activity that involved five or more participants, warranting a four-level offense-level increase under § 3B1.1(a). He argues that the district court should have found instead that he was only a manager or supervisor under § 3B1.1(b), warranting a three-level increase. Because Watkins concedes the three-level increase under § 3B1.1(b), his appeal of the four-level enhancement under § 3B1.1(a) is moot. This three-level enhancement, coupled with Watkins's base offense level of 38 and the two-level enhancement for use of a minor, already places Watkins at an adjusted offense level of 43. "An offense level of more than 43 is to be treated as an offense level of 43." U.S.S.G. Ch. 5, Pt. A, cmt. n.2

---

[7]One ounce equals 28.35 grams. U.S.S.G. § 2D1.1, cmt. n.10.

(sentencing table); *see United States v. Saccoccia*, 58 F.3d 754, 790-91 (1st Cir. 1995) ("It is this court's settled practice not to address an allegedly erroneous sentencing computation if, and to the extent that, correcting it will neither change the defendant's sentence nor relieve him from some unfair collateral consequence."). For the same reasons, Watkins's appeal of the two-level obstruction of justice enhancement under § 3C1.1 is also moot.

### 5.     Reasonableness

In addition to Watkins's challenges to the district court's calculation of the advisory guidelines range, Watkins argues that his life sentence is unreasonable.[8] "Our review of a sentence for reasonableness is akin to our traditional review for abuse of discretion." *United States v. Cubillos*, 474 F.3d 1114, 1120 (8th Cir. 2007).

> A district court imposes an unreasonable sentence if it: "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case."

*Id*. (quoting *United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005)). The district court made a clear and careful record of all of the sentencing factors under 18 U.S.C. § 3553(a) and considered each in determining Watkins's sentence. Further, the district court acknowledged that it had considered Watkins's arguments for a variance

---

[8]Watkins challenges the 100:1 crack-to-powder cocaine drug quantity ratio incorporated into federal drug statutes and the guidelines as per se unreasonable. We rejected this argument in *United States v. Cawthorn*, 429 F.3d 793, 802-03 (8th Cir. 2005), *petition for cert. filed*, No. 05-11273 (U.S. May 25, 2006). Though Watkins hoped that our decision in *United States v. Spears*, 469 F.3d 1166 (8th Cir. 2006) (en banc), *petition for cert. filed*, No. 06-9864 (U.S. Mar. 2, 2007), would change that holding, it did not.

based upon the § 3553(a) factors, and his brief to us on these points is taken verbatim from his sentencing memorandum to the district court. He makes no specific allegation of error in the district court's § 3553(a) analysis. Our review of the record shows that the district court considered all relevant factors, weighed them properly and did not commit a clear error of judgment in arriving at Watkins's life sentence, which was within the range of choice dictated by the facts of the case. Accordingly, Watkins's sentence was not unreasonable.

## III.   CONCLUSION

We affirm Watkins's convictions and sentence.

_____