# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3174

_____

United States of America,          *
                                 *

       Plaintiff - Appellee,    *
    v.                         *   Appeal from the United States
                                 *   District Court for the Eastern
William Miller,              *   District of Missouri
                                 *

       Defendant - Appellant.   *

_____

Submitted: October 15, 2007
Filed: January 8, 2008

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

William Miller was sentenced to 151 months as a career offender after pleading guilty to a one count indictment for a 2005 bank robbery in violation of 18 U.S.C. § 2113(a). Miller appeals his sentence, arguing that the district court[1] erred by treating two prior robbery convictions as qualifying felonies to make him a career offender. We affirm.

About ten years before his current offense Miller committed two robberies on successive days. On January 31, 1995, he stole a vehicle with the idea of using it to

_____

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

rob a Lindell Bank branch office in St. Louis County. Instead of doing that, he picked up a friend, Marion Earl Hawks, and later stopped at a Vickers gas station in Overland, Missouri shortly before 9 p.m. Miller walked into the station store to purchase a drink and check out the interior, then returned to the car to retrieve his coat. He went back inside and demanded money from the cash register, falsely claiming that he had a gun. The clerk gave Miller approximately $150, and he and Hawks drove to a local tavern where they used the proceeds for an evening of drinking. Hawks was unaware of Miller's plans or that he had robbed the store until Miller told him on the way to the tavern.

The pair robbed the Mark Twain Progress Bank in Fenton, Missouri the next morning. This time Hawks was in on the plan, and he drove the car and waited while Miller went inside and demanded money. Miller again pretended that he was carrying a firearm, and he returned to the car with approximately $600. Hawks drove away according to their preplanned escape route, and they split the proceeds. After Miller doused the car with lighter fluid and burned it, the two walked into a bar and watched the police and fire departments attempt to put out the fire.

Miller was arrested the following day for both robberies, which were prosecuted in different court systems. Miller was indicted and pled guilty in federal court to the bank robbery for which he was sentenced to seventy one months. He was charged in state court for the gas station robbery, pled guilty, and received a ten year sentence to be served concurrently with the federal sentence.

Prior to his sentencing hearing for the 2005 bank robbery, Miller objected to the presentence investigation report (PSR) conclusion that he was a career offender under U.S.S.G. § 4B1.1. As a consequence of being designated a career offender under U.S.S.G. § 4B1.1(b), Miller was placed in criminal history category VI which carries an offense level based on the statutory maximum. Accordingly, the PSR gave Miller a total offense level of 29 with criminal history VI and a resulting guideline range of 151 to 188 months. Miller objected that the 1995 robberies were related cases under

U.S.S.G. § 4A1.2(a)(2) and should thus be counted as a single conviction. He would then not have the qualifying convictions for the career offender guideline and his total offense level would have been lowered to 19, his criminal history to category IV, and his guideline range to 46 to 57 months. The district court found that the 1995 robberies were not related cases because they were not part of a single common scheme or plan, concluded that Miller was a career offender, and sentenced him to 151 months. Miller's plea agreement retained his right to appeal should he be sentenced as a career offender, and he now appeals his sentence.

We review the district court's application of the sentencing guidelines de novo and its factual findings for clear error. United States v. Davidson, 437 F.3d 737, 739-40 (8th Cir. 2006). The district court's finding that Miller's prior crimes were unrelated is thus reviewed for clear error. United States v. Mills, 375 F.3d 689, 691 (8th Cir. 2004). Assuming the district court applied the proper factors prescribed by the sentencing guidelines, its factual determinations will stand "unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." United States v. Rodriguez-Hernandez, 353 F.3d 632, 635 (8th Cir. 2003).

Under the federal sentencing guidelines, a defendant is defined as a career offender if (1) he was at least eighteen years old at the time of the instant offense; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) he had at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). Miller concedes that he meets the first two elements, but he contends that his 1995 robberies should not be considered as two prior felonies because they were instead related cases within the meaning of U.S.S.G. § 4A1.2(a)(2).

Because Miller's prior robberies were not separated by an intervening arrest, they will be treated as a single offense if they "(A) occurred on the same occasion, (B)

were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2 n.3. The guidelines require "treating all but the most closely related prior sentences as distinct criminal violations under § 4A1.2(a)(2)" in order to deter repeated criminal conduct by enhanced sentences. United States v. Berry, 212 F.3d 391, 395 (8th Cir. 2000). Miller's two robberies in 1995 did not occur on the same occasion, and they were not consolidated for trial or sentencing, but Miller argues that they should be treated as a single offense because they were part of a single common scheme or plan.

The guidelines do not define single common scheme or plan, and the application of that term is factually driven. See United States v. McCracken, 487 F.3d 1125, 1127 (8th Cir. 2007). We have recognized that various considerations bear on a district court's fact bound determination whether two offenses were part of a common scheme or plan, and our decision in Mills listed many that may be relevant: (1) the time period within which the offenses took place, (2) the participants involved, (3) the victims targeted, (4) the motive, (5) the modus operandi, (6) the geographic location of the crimes, (7) the substantive offenses committed, (8) whether the acts were uncovered by a common investigation, and (9) whether the offenses were jointly planned. Mills, 375 F.3d at 692 n.5 (citing United States v. Brothers, 316 F.3d 120, 123-24 (2nd Cir. 2003)); see United States v. McCracken, 487 F.3d at 1127 ("Whether the two prior bank robberies were part of a 'single common scheme or plan' is a fact-intensive inquiry in which a variety of considerations may be relevant.").

The district court applied the Mills factors and reflected that this is a "very close case." It acknowledged some factors supported Miller's argument that the robberies were related cases but pointed to others favoring the opposite conclusion. Although the time period between the robberies was close, the court noted that there was an intervening period between them and there were different victims. The modus operandi and motive were found to be the same in that Miller went into each establishment demanding money and indicating he had a gun. The robberies both took place in the greater St. Louis area and were uncovered by a common

investigation. In the end the district court found "that they were two separate crimes, not jointly planned and not jointly carried out [and that] is the principle basis for my finding." The district court then sentenced Miller as a career offender.

Miller contends that the district court committed two errors in arriving at that sentencing determination. He argues that the district court misapplied our multifactor test by treating the "jointly planned" factor as dispositive and thereby ignoring the others. Miller also submits that the district court erroneously interpreted the meaning of "jointly planned." The government contends that the district court considered and correctly analyzed all relevant factors.

After carefully reviewing the record, we hold that the district court did not err in finding that Miller's two prior robberies were not related under U.S.S.G. § 4A1.2 n.3[2]. Although the robberies took place within twenty four hours in the same county, they were committed on separate days at different locations, they targeted different victims, and only Miller took part in both. See United States v. Lynch, 477 F.3d 993, 997 (8th Cir. 2007) (assaults which occurred on consecutive dates and involved different locations and victims were unrelated); see also United States v. Paden, 330 F.3d 1066, 1067-68 (8th Cir. 2003) (crimes were unrelated even though defendant used same firearm only four days apart and pled guilty to charges on same day and received concurrent sentences).

Crimes committed in close temporal proximity do not simply morph into related crimes, for it would be an "illogical result that a defendant who is repeatedly convicted of the same offense on different occasions could never be considered a career offender under the guidelines." Berry, 212 F.3d at 393; see also United States

---

[2]Miller was sentenced under the 2005 version of the United States Sentencing Guidelines Manual. We express no opinion as to what effect, if any, the November 1, 2007 amendments to U.S.S.G. § 4A1.2(a)(2) would have upon the analysis in this case.

v. Mau, 958 F.2d 234, 236 (8th Cir. 1992) ("[s]imilar crimes are not necessarily related crimes").  Although financial gain constituted Miller's motive for both robberies and he used a similar modus operandi, those factors do not prove that the crimes were related.  See Davidson, 437 F.3d at 740 ("a single common scheme or plan involves something more than simply a repeated pattern of conduct"); see also United States v. Lowe, 930 F.2d 645, 647 (8th Cir. 1991) (identical motive and modus operandi alone are insufficient to show related crimes).

Moreover, the ninth Mills factor - whether the offenses were jointly planned - supports the district court's finding that the robberies did not arise from a single common scheme or plan.  Miller admitted upon his arrest that he had stolen the car to rob a Lindell Bank branch, but he then abandoned that plan and instead robbed the gas station.  Miller told the authorities that he and Hawks "were just driving around in a brown car" and that he "just pulled into the Vickers [gas] station."  In contrast to the apparently spontaneous gas station robbery committed solely by Miller, he and Hawks jointly prepared and collaboratively executed the robbery of the Mark Twain bank the following day.  Miller offered no evidence that the two robberies had been jointly planned or were in any way connected.  See McCracken, 487 F.3d at 1127 ("A 'common scheme or plan' implies that the crimes were jointly planned, or at least that the offender intended that the second would be committed as a consequence of the first.").  The district court properly considered the relevant factors listed in Mills and did not clearly err in finding that they militated against considering Miller's two prior robberies to be related cases.

Miller also asserts that the district court erroneously interpreted the meaning of "jointly planned" by inquiring whether the robberies were planned by more than one individual.  He contends that such an interpretation would lead to implausible results, because a defendant who acted alone could never have committed prior crimes that qualify as related cases, and conversely a string of entirely different crimes planned by multiple persons could be deemed related under U.S.S.G. § 4A1.2(a)(2).  The

government argues that the court permissibly inquired whether the robberies were the product of joint planning by Miller and Hawks.[3]

The words "jointly planned" are open to two reasonable meanings. They can be understood to inquire whether crimes were planned at the same time or whether crimes were planned by multiple persons. We have not held that either interpretation is incorrect although we have tended to focus on whether offenses were planned at the same time. See United States v. Hessman, 493 F.3d 977, 985 (8th Cir. 2007) ("whether the defendant jointly planned the offenses"); Lynch, 477 F.3d at 996 (same). We see no reason, however, to preclude district courts from also considering whether multiple participants planned offenses together to assess whether the offenses arose from a single common scheme or plan. See Mills, 375 F.3d at 693 (concluding there was no single common scheme or plan and noting that "although generally the same actors committed the burglaries, they did not plan all three burglaries at the same time."). Crimes committed by multiple persons are less likely to have arisen out of a single common scheme or plan if they were not jointly planned. Miller's argument that the two robberies were related is undermined by the evidence that Hawks participated in the planning and execution of only the second robbery.

The district court considered whether Miller and Hawks jointly planned the 1995 robberies as only one element of its inquiry into whether the offenses were part of a single common scheme or plan, and its conclusion that they were not related is

---

[3]The government also points out that the district court's perhaps misleading wording should be read in the context of responding to Miller's objection to the PSR, in which he asserted "that these two offenses were part of a common scheme or plan by Miller (and Hawks) to get money by robbery." The district court viewed the robberies as not arising from a single common scheme or plan and explained in part that "I think the second one was, but I think the first one was not. I think the first one was carried out solely at the instance of [Miller] and that he did so without sharing that information."

supported by the record.  It was therefore not error to sentence Miller as a career offender.  Accordingly, we affirm the judgment of the district court.

_____