# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3644

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Southern District of Iowa.
Myron Dejuan Orr,　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　*

_____

Submitted: September 23, 2010
Filed: March 3, 2011

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

On August 13, 2008, following a two-day trial, a jury found Defendant-appellant Myron DeJuan Orr guilty on all seven counts of a superceding indictment charging him with various crack cocaine and firearm offenses. Six days later, Orr's counsel moved for a new trial based on his own purportedly ineffective assistance. Following an evidentiary hearing on the matter, the district court[1] denied the motion, and subsequently sentenced Orr to life imprisonment. On appeal, Orr argues that the district court abused its discretion in (1) denying his motion for new trial, and (2)

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

rendering certain evidentiary rulings during the course of trial. Additionally, prior to oral arguments in this matter, Orr filed a supplemental pro se brief urging this court to retroactively apply the newly enacted Fair Sentencing Act of 2010, which reduces the existing sentencing disparity between crack-cocaine and powder-cocaine offenses. For the reasons that follow, we affirm.

## I. *Background*

In 2006, law enforcement officials suspected that Orr dealt crack cocaine extensively in Burlington, Iowa. Thus, local and federal authorities commenced an ongoing investigation into Orr and his activities. The county sheriff's office in Des Moines, Iowa, while investigating a residential burglary in Mediapolis, Iowa, interviewed Nicholas Nelson. Nelson confessed to the burglary and stated that he bartered one of the stolen items—an X-Box video game system—to Orr in exchange for crack and cash. According to Nelson, this trade occurred at Orr's residence, located at 1305 Washington Street in Burlington.

Based on this information, authorities obtained and executed a search warrant to look for the stolen property at Orr's residence. Orr was not present at the time. Officers found the X-Box connected to a television in the kitchen and also discovered (1) numerous plastic bags in the master-bedroom closet and elsewhere bearing torn corners[2] and containing white powder residue, (2) the packaging for a scale commonly used by drug dealers to weigh narcotics, (3) Orr's state-issued identification listing 1305 Washington as his place of residence, (4) 2005 income-tax returns showing the same, and (5) a shotgun under the master-bedroom bed. Authorities later determined the shotgun to be stolen.

---

[2]At trial, the government presented evidence that it is the common practice of crack dealers to "tear the corners out of bags, fill them with crack, and tie them off."

Despite the seizure of stolen property and evidence of drug distribution, the search did not immediately result in Orr's arrest. The government maintains that Orr continued dealing crack out of his home at 1305 Washington Street. Throughout January 2007, a Burlington Police Department ("Burlington PD") Task Force staged several controlled buys of crack cocaine from Orr, utilizing one of Orr's prior customers, turned confidential informant, Darwin Dickerson.

Based on these buys and a search of Orr's curbside garbage, yielding more plastic bags with torn corners, Burlington PD executed a second search warrant at 1305 Washington Street on June 1, 2007. This time, authorities found seven bags of crack cocaine; a stun gun; digital scales; multiple cellular phones; several large-screen plasma televisions; stereo equipment; $693 cash; mail addressed to both Orr and his girlfriend, Julie Pfaltzgraff; and a newly issued Iowa identification card listing 1305 Washington as Orr's home address. Orr, Pfaltzgraff, and Pfaltzgraff's three children were present when the authorities searched the home.

Three days later, on June 4, 2007, Burlington PD arrested Orr pursuant to a warrant. As Burlington PD Deputy Brad Siegfried handcuffed Orr and escorted him to the waiting patrol car, Orr insisted that Deputy Siegfried did not actually possess an arrest warrant for Orr, to which Deputy Siegfried replied that he had valid arrest warrants for both Orr and Pfaltzgraff. Orr responded by confessing ownership to "everything in the house" and urging the officers not to involve Pfaltzgraff in their investigation. Orr's incriminating statement to Deputy Siegfried occurred before Orr received *Miranda* warnings. Shortly after his exchange with Deputy Siegfried, Orr recanted his confession and claimed that police planted any evidence found at the house.

Released on bond, Orr resumed selling crack out of the Washington Street residence in November 2007, and police again arranged several controlled buys from Orr, this time enlisting the help of Cody Bailey, another of Orr's prior patrons, turned

informant. Additionally, Keri Christofferson told law enforcement officers that she made crack purchases from Orr at 1305 Washington Street and facilitated purchases there on others' behalf.

On February 12, 2008, a grand jury returned a six-count indictment charging Orr with crack-cocaine related offenses. The district court initially appointed Murray Bell as Orr's counsel, but, on March 12, 2008, Orr's mother retained Frederick Cohn as counsel for Orr. Between June 6 and June 9, 2008, Cohn filed seven pretrial motions, and on June 20 he filed ten more. Notably, among these motions was Cohn's "Motion to Exclude Evidence Concerning Incident of June 4, 2007," filed on June 20, 2008. This motion failed to specify (1) the evidence sought to be excluded and (2) the legal basis for such exclusion. Later, on the first day of trial and just prior to *voir dire*, Cohn clarified that this motion sought the exclusion of the custodial confession Orr made to Deputy Siegfried on the day of his arrest, prior to being *Mirandized*. The district court denied the motion. Cohn renewed his exception to this evidence at trial. Specifically, Cohn contemporaneously objected to the introduction of this confession through Deputy Siegfried's testimony, prompting the district court to interrupt Deputy Siegfried's direct examination and permit Cohn to *voir dire* Deputy Siegfried outside the jury's presence about the details of Orr's confession. Ultimately, the district court overruled Cohn's objection and permitted Deputy Siegfried to testify about Orr's confession.

On August 13, 2008, after hearing substantially the same evidence recited above, the jury returned a verdict of guilty on all counts. Six days later, Cohn filed a motion for new trial on Orr's behalf, citing his own performance as counsel as the basis for relief. Cohn mentioned several acute ailments[3] for which he had received

---

[3]According to Cohn, "[s]ome time between commencement of trial and termination of trial, counsel had a stroke and Atrial Fibrillation, which was causing trans[ient] ischemic attacks." In his motion, Cohn also stated that Orr had apprised him that he (Cohn) repeatedly fell asleep during the trial. Finally, Cohn claimed that

-4-

treatment since the trial's conclusion and that may have gone undiagnosed during the trial. Cohn averred that, insofar as they afflicted him during trial, these ailments may have impaired his capacity to adequately represent Orr. Cohn also moved separately for the district court to appoint new counsel "based on the facts stated in the Motion for New Trial," asserting that "defendant should be represented by counsel who can represent defendant on the issue of whether defendant had adequate effective assistance of counsel."

On February 12, 2009, the district court granted Cohn's motion to appoint new counsel, relieved Cohn as counsel of record, and, on February 17, 2009, reappointed Orr's original appointed counsel Murray Bell. On September 23, 2009, after receiving Orr's amended motion for new trial and responses thereto, the district court held an evidentiary hearing on the ineffective-assistance-of-counsel claims that Orr raised in his motion for new trial. In relevant part, Orr argued in his amended motion that he was entitled to a new trial because Cohn rendered ineffective assistance of counsel by: (1) failing to object to certain hearsay testimony; (2) failing to adequately cross examine Christofferson about (a) her cooperation agreement with the government, and (b) her prior inconsistent statements to police concerning the amount of crack she and others purchased from Orr; (3) failing to secure suppression of Orr's custodial, un-*Mirandized* confession to Deputy Siegfried; (4) improperly dissuading Orr from testifying on his own behalf; and (5) failing to call Pfaltzgraff as a defense witness.

On November 4, 2009, after briefing and hearing, the district court denied Orr's motion for new trial in its entirety. Specifically, the district court concluded the following in a written memorandum opinion: (1) Cohn did fail to assert viable hearsay objections, but his failure to do so easily could be explained as excusable trial strategy, and moreover, Orr failed to demonstrate prejudice from Cohn's failure to

while driving home to Chicago following the trial, highway patrolmen stopped him twice, ostensibly because of his erratic driving, on suspicions that he was driving while intoxicated.

object; (2) contrary to Orr's contention, Cohn did rigorously cross examine Christofferson, most notably on her history of mental health problems and her likely hope of receiving a reduced sentence in exchange for her testimony; (3) although Cohn did not move pretrial to suppress Orr's statement as is customary, Orr suffered no prejudice as a result because: (a) Cohn did timely and adequately object to the statement's admission at trial; and (b) in any event, evidence of Orr's confession was properly admitted because it was not elicited by Deputy Siegfried in violation of *Miranda*; (4) Cohn did not ineffectively assist Orr by dissuading him from testifying because Orr admitted that Cohn did so for the stated reason that the government would discredit Orr's testimony, presumably by impeaching Orr with his three prior drug convictions; (5) citing the rule that a lawyer's election not to call a witness is a virtually unassailable decision committed to a lawyer's trial strategy, the Court found no error—and thus no prejudice to Orr—in Cohn's decision not to call Pfaltzgraff as a witness.

Subsequently, on November 12, 2009, the district court sentenced Orr to life imprisonment for Count 1 (conspiracy to distribute fifty grams or more of crack cocaine), as well as 360 months' imprisonment for Counts 2–6 (various possession and distribution offenses), and 120 months' imprisonment for Count 7 (felon in possession of a firearm), all to run concurrently. Orr now appeals the district court's denial of his motion for new trial and two of the district court's evidentiary rulings.

II. *Discussion*
A. *Ineffective Assistance of Counsel*

On appeal, Orr maintains that Cohn rendered ineffective assistance of counsel at trial in violation of the Sixth Amendment, and thus that the district court erred in denying Orr's motion for new trial. Specifically, Orr alleges that Cohn made a number of critical missteps during trial.

"'Generally, ineffective assistance of counsel claims are better left for post-conviction proceedings'" like habeas corpus petitions brought under 28 U.S.C. § 2255. *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *United States v. Cook*, 356 F.3d 913, 917 (8th Cir. 2004)). Still, we routinely review ineffective-assistance claims on direct appeal where, as here, "the record is fully developed because the district court held an evidentiary hearing at which it allowed [the defendant] to present evidence regarding the alleged ineffective assistance of counsel." *Id*. Moreover, we have found additional justification for reviewing ineffective-assistance claims on direct appeal when the parties concur that the record is fully developed and thus ripe for review. *See id.* ("Additionally, both parties represented at oral argument that the record is fully developed."). Both Orr and the government represent that the record is sufficiently developed to enable review. We agree, and accordingly review the district court's disposition for abuse of discretion. *See United States v. Villalpando*, 259 F.3d 934, 938 (8th Cir. 2001) ("On the merits, we review the district court's ruling on a motion for new trial based on a claim of ineffective assistance of counsel for abuse of discretion.")

For Orr to prevail on his ineffective-assistance claims, he must satisfy the two-part test laid out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Orr first must show that, with respect to each instance of alleged ineffectiveness by counsel that counsel made an "error[ ] so serious that [he] was not functioning as the counsel guaranteed [Orr] by the Sixth Amendment[.]" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 687). In making this initial consideration, there is a "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). Moreover, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* (quoting *Strickland*, 466 U.S. at 690).

Second, even assuming that Orr satisfies *Strickland*'s first prong by showing that counsel made such serious errors, these errors will not warrant reversal unless Orr "'show[s] that the deficient performance prejudiced the defense.'" *Steinkuehler v. Meschner*, 176 F.3d 441, 445 (8th Cir. 1999) (quoting *Strickland*, 466 U.S. at 687)). "Prejudice is established if there is 'a reasonable probability that,' but for counsel's errors, 'the result would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). Thus, "[b]oth deficient performance and resulting prejudice must be established to satisfy the *Strickland* standard." *Id.* (citing *Strickland*, 466 U.S. at 697). Under *Strickland*'s test, Orr fails to show that the district court abused its discretion in denying his motion for new trial due to ineffectiveness of trial counsel.

### 1. *Failure To Object to Certain Hearsay Testimony*

Orr first alleges that Cohn rendered ineffective assistance by failing to object to certain hearsay testimony of government witness, Mark Anderson concerning Orr's actual place of residence. At trial, Orr hotly contested where he resided during the relevant time periods. Specifically, as Orr explains in his brief, "[w]here Mr. Orr resided was very important because of the fact that the contraband that supports many of the counts in the Indictment were found at the residence at 130[5] Washington Street where Mr. Orr was claiming he did not live." Orr's defense suggested that for most of the relevant time period, including on September 14, 2006, when Burlington PD executed the first search warrant at 1305 Washington Street, he resided in one of Anderson's apartment units located at 803 Summer Avenue. Orr reasserted this position at the evidentiary hearing held by the district court on the new trial motion.

Contrary to Orr's position, Anderson testified at trial that he "d[idn't] think that [Orr] ever moved in" to 803 Summer and only "stayed there some." In the portion of testimony to which Orr now takes exception as inadmissible hearsay, Anderson explained that he formed his suspicion that Orr did not physically reside in the apartment "[j]ust from talking to the other tenants." Orr contends that counsel's failure

to object to this testimony constituted an error fatal to his defense that 1305 Washington Street was not his actual residence.

Anderson's statement is hearsay as it clearly is an out-of-court statement offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Nevertheless, Cohn's failure to object to one question—"Why do you think that [Orr] never resided at the apartment that he rented?"—that, on its face, does not elicit a hearsay answer, is not a performance deficiency "so serious that [he] was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Moreover, even assuming arguendo that counsel's error met the first prong of *Strickland*, it was not prejudicial under *Strickland*'s second prong. Evidence tending to show that Orr did in fact reside with Pfaltzgraff at 1305 Washington Street was substantial. During their execution of the first search warrant, authorities discovered, among other things, baggies of the type commonly used in drug distribution bearing Orr's fingerprints, Orr's state-issued identification card listing 1305 Washington as his home address, and 2005 income-tax returns listing the same. Added to this, Orr's probation records at the time likewise listed 1305 Washington as his home address, and myriad witnesses testified to arranging or consummating crack purchases from Orr at the Washington Street home.

Accordingly, the district court did not abuse its discretion in finding no "'reasonable probability that, but for'" Cohn's failure to object to Anderson's hearsay testimony, "'the result of the proceeding would have been different . . . .'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 694).

### 2. *Failure To Adequately Cross Examine Christofferson*

In his next alleged instance of ineffectiveness, Orr claims that trial counsel failed to sufficiently cross examine Christofferson to satisfy his constitutional right to confront witnesses testifying against him. Specifically, Orr maintains that counsel rendered ineffective assistance when he (1) failed to impeach Christofferson with her

cooperation agreement with the government and (2) failed to impeach her with her prior inconsistent statements regarding the number of drug transactions between Orr and others that she arranged.

Concerning Orr's first contention, Orr points out that, prior to testifying, Christofferson faced two charges that each carried a mandatory minimum sentence of five years absent Christofferson's agreement to cooperate with the government. Orr maintains that Christofferson's expected benefits from her performance under the cooperation agreement motivated her to embellish or fabricate her inculpatory testimony. Orr argues that Cohn should have highlighted Christofferson's potential ulterior motive.

Additionally, Orr notes that in a proffer interview Christofferson gave on February 11, 2008, to federal and local law enforcement, she stated that she had purchased crack cocaine at the Washington Street house from Orr "three or four times for [sic] one-half ounce quantities." Christofferson did not expound on this testimony and made no mention of arranging drug transactions between Orr and others. Nevertheless, less than a month later, on March 8, 2008, Christofferson testified at Orr's grand jury hearing that she obtained crack cocaine from Orr for herself and others, "probably 75 to 100 times." Christofferson substantially reiterated her grand jury testimony at Orr's trial. Again, Orr maintains that counsel rendered ineffective assistance by failing to impeach Christofferson on this prior inconsistency.

The Supreme Court has recognized that "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Accordingly, we "generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Villalpondo*, 259 F.3d at 939. Still, we heed

the Supreme Court's guidance that, "'[a]bsent competent counsel, ready and able to subject the prosecution's case to the 'crucible of meaningful adversarial testing,' there can be no guarantee that the adversarial system will function properly to produce just and reliable results.'" *Driscoll v. Delo*, 71 F.3d 701, 706 (8th Cir. 1995) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 377 (1993) (Stevens, J., dissenting)). In that vein, "[t]he Eighth Circuit has found constitutionally deficient performance of trial counsel based on ineffective cross-examination where counsel allowed inadmissible devastating evidence before the jury or when counsel failed to cross-examine a witness who made grossly inconsistent prior statements." *Whitfield v. Bowersox*, 324 F.3d 1009, 1017 (8th Cir. 2003), *vacated in part on other grounds by*, 343 F.3d 950, 950 (8th Cir. 2003) (citing *Hadley v. Groose*, 97 F.3d 1131, 1135–36 (8th Cir. 1996); *Driscoll*, 71 F.3d at 709–11)). Specifically, "[a] failure to impeach constitutes ineffective assistance when there is a reasonable probability that, absent counsel's failure, the jury would have had reasonable doubt of the petitioner's guilt." *Id.* at 1018 (citing *Driscoll*, 71 F.3d at 711).

When probed at the evidentiary hearing about his alleged failure to impeach Christofferson with her cooperation agreement and prior inconsistent statements, Cohn could not even recall his cross-examination of Christofferson, let alone any strategic reasons for his actions during it. Still, Cohn admitted that, if faced with the same scenario in the future—i.e., an adversarial witness testifying under a cooperation agreement and having previously made statements grossly inconsistent with those offered at trial—he undoubtedly would have impeached the witness on both aspects of her testimony.

Regarding the cooperation agreement, the government correctly noted that it questioned Christofferson at trial about her cooperation agreement and introduced the agreement into evidence. Moreover, although Orr contends in his brief that "Cohn failed to ask . . . Christofferson even one question about the agreement," the trial transcript reflects otherwise. Indeed, the record reveals that Cohn elicited

-11-

Christofferson's admission on cross examination that she was testifying pursuant to a cooperation agreement and in hopes of receiving a reduced sentence. Accordingly, the record clearly belies Orr's argument that Cohn erred by failing to impeach Christofferson with evidence of her cooperation agreement with the government.

Additionally, concerning Cohn's failure to impeach Christofferson with the inconsistent statements that she made in her proffer interview, the government also notes that Cohn vigorously cross examined Christofferson on her history of mental health problems. Still, given Cohn's failure to impeach Christofferson's veracity on this critical aspect of her testimony, coupled with his inability to articulate a strategic reason for such failure, Cohn's representation likely fell below the threshold of reasonable professional competence required by *Strickland*. *See Steinkuehler*, 176 F.3d at 445 (finding ineffective assistance for defense counsel's failure to impeach "especially critical" testimony, and rejecting the state's argument that such failure was attributable to strategy, citing that "trial counsel could not recall why he did not pursue this area, and only speculated as to what he may have been thinking"). Cohn may have eroded Christofferson's credibility in the jury's eyes by impeaching Christofferson with her grossly-inconsistent prior statements.

Nonetheless, Orr again fails to show the requisite prejudice: namely, that there is a reasonable probability that, absent counsel's failure to impeach, the jury would have had reasonable doubt of Orr's guilt. *Whitfield*, 324 F.3d at 1018 (citing *Driscoll*, 71 F.3d at 711). Indeed, "'it is very difficult to show the trial outcome would have been different had specific questions been asked on cross examination,' particularly where other trial testimony repeatedly corroborated the [challenged] testimony." *United States v. Watkins*, 486 F.3d 458, 466 (8th Cir. 2007), *vacated on other grounds*, 552 U.S. 1091 (2008). Here, the evidence corroborating Pfaltzgraff's testimony concerning Orr's extensive narcotics distribution was overwhelming. In addition to Christofferson's unimpeached testimony, the jury heard testimony from law enforcement regarding its many controlled buys from Orr, as well as the

testimony of Bailey and Dickerson, the two confidential informants who participated in these controlled buys and also purchased crack from Orr prior to aiding law enforcement. This testimony, coupled with the drugs and drug paraphernalia seized at the Washington Street house and linked to Orr, rendered Christofferson's testimony merely cumulative.

Orr attempts to square his case with *Driscoll*, where we found a defense counsel's failure to adequately cross examine or impeach a witness to be constitutionally ineffective. Nevertheless, *Driscoll* is inapposite to Orr's case. In *Driscoll*—a case involving the murder of a prison guard during a jailhouse riot—we found ineffective assistance where defense counsel failed to impeach the state's key eyewitness, the defendant's cellmate, with his prior inconsistent statements. 71 F.3d at 710. The cellmate initially told investigators that the defendant, upon returning to the cell after the riot, merely commented that the guard "had been stuck," but the cellmate later testified at trial that the defendant had exclaimed, "Did I take him out, JoJo, or did I take him out." 71 F.3d at 710. Faced with these facts, as well as little other evidence directly implicating the defendant, we found "no objectively reasonable basis on which competent defense counsel could justify a decision not to impeach a state's eyewitness whose testimony, as the district court points out, took on such remarkable detail and clarity over time." *Id. Driscoll* is easily distinguishable from Orr's case because of the extensive corroborating evidence from other sources establishing Orr's drug distribution.

Thus, there is not a reasonable probability that Cohn's impeachment of Christofferson would have manufactured reasonable doubt in the jurors' minds, and the district court did not abuse its discretion in failing to find ineffective assistance.

-13-

### 3. *Failure To Secure Suppression of*
### *Orr's Un-*Mirandized, *Custodial Confession*

Next, Orr contends that Cohn rendered ineffective assistance of counsel when he failed to secure suppression of Orr's un-*Mirandized*, custodial confession to Deputy Siegfried during his arrest on June 4, 2007. Cohn filed his "Motion to Exclude Evidence Concerning Incident of June 4, 2007," but did not state what evidence he sought to exclude or to which June 4 incident the motion referred. At the pretrial conference, the district court denied the motion. Orr concedes that once Deputy Siegfried began testifying about Orr's statement, Cohn timely objected to the introduction of any evidence of Orr's confession, and further secured an opportunity to *voir dire* Deputy Siegfried, on the record and outside the jury's presence, about all of the events surrounding Orr's confession. After his *voir dire* of Deputy Seigfried, Cohn renewed his motion to exclude any evidence of Orr's confession on the ground that it was elicited in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), reasoning that Deputy Siegfried's comment about also possessing an arrest warrant for Pfaltzgraff amounted to the functional equivalent of an interrogation pursuant to *Rhode Island v. Innis*, 446 U.S. 291 (1980). The district court denied Cohn's renewed motion.

As the district court correctly observed in its denial of Orr's motion for new trial, "[b]y objecting appropriately, [Cohn] performed 'within the wide range of reasonable professional assistance.'" Likewise, the district court was correct in its conclusion that, even if counsel was ineffective in failing to file a pretrial motion to suppress, Orr's custodial confession was not excludable because Deputy Siegfried's statements could not reasonably be perceived by Orr "to elicit an incriminating response." *See id. at 301*. As the Supreme Court noted in *Innis*, "the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id*. at 302. Moreover, as this court has stated, a "'law enforcement officer's mere description of the evidence and of potential charges against a suspect, in direct

response to the suspect's importuning, hardly can be classified as interrogatory.'" *United States v. Wipf*, 397 F.3d 677, 685 (8th Cir. 2005) (quoting *United States v. Conley*, 156 F.3d 78, 83 (1st Cir. 1998)). The evidence reflects that, in response to Orr's challenge that no valid warrant for his arrest existed, Deputy Siegfried merely assured Orr that he (Deputy Siegfried) possessed a warrant for Orr and Pfaltzgraff. This is precisely the type of benign, informative comment envisioned by the Supreme Court and our circuit as not running afoul of *Miranda*.

Consequently, because Cohn's failure to secure suppression of Orr's custodial confession did not constitute ineffective assistance under *Strickland*, the district court did not abuse its discretion in denying Orr's motion for new trial on that basis.

4. *Allegedly Improper Efforts To Dissuade Orr*
*from Testifying on His Own Behalf*

Orr also alleges that Cohn ineffectively assisted him by improperly dissuading him from testifying on his own behalf. Orr's argument is misplaced. As the district court noted in its denial of Orr's new-trial motion, Orr "cannot and does not claim that he was unaware of his right to testify. The court engaged the defendant in an elaborate discussion concerning his right to testify, his right to refuse to testify and what the jury would be told under either of those circumstances." Furthermore, at the district court's evidentiary hearing on his new trial motion, Orr conceded that Cohn never told him he could not testify. The record reflects that Orr knew that he could decide whether to testify on his own behalf.

Moreover, we consistently have affirmed that a defense counsel's decision not to call a witness is a "'virtually unchallengeable decision of trial strategy.'" *Watkins*, 486 F.3d at 465 (quoting *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005)). Trial counsel could not recall at the evidentiary hearing whether he spoke with Orr about his decision to testify. However, Orr admitted that Cohn advised Orr not to testify because the government would likely attempt to discredit Orr with evidence of

-15-

his past drug-related convictions and activities. As the district court correctly concluded on this point, Cohn's advice to Orr not to testify "'to prevent the government from cross-examining [Orr] about an earlier drug conviction clearly falls within the limits of reasonable trial strategy.'" (quoting *Sumlin v. U.S.*, 46 F.3d 48, 49 (8th Cir. 1995)).

Accordingly, Cohn did not render ineffective assistance of counsel in advising Orr not to testify, and the district court did not abuse its discretion in denying Orr's new trial motion to the extent it sought relief on that basis.

### 5. *Failure To Call Pfaltzgraff as a Defense Witness*

For virtually the same reasons that Cohn did not ineffectively assist Orr in advising Orr not testify, counsel also did not err in refusing to call Orr's girlfriend, Pfaltzgraff, as a witness. As already stated, Orr offers no persuasive reason to vary from the usual deference to counsel's legitimate trial strategy. *See Watkins*, 486 F.3d at 465.

At the evidentiary hearing, Pfaltzgraff proffered the testimony she would have given at trial. Specifically, Pfaltzgraff claimed that she would testify that the shotgun found under the master bed at the Washington Avenue house had been inadvertently left there by Nelson—the man who claimed to have traded the gun and the X-box to Orr for crack. Additionally, she would have stated that she, not Orr, purchased the X-box secondhand from Nelson with no knowledge that it had been stolen. Pfaltzgraff also claimed that she would have testified at trial that Orr's actual residence on September 14, 2006, the time of the first search warrant's execution, was 803 Summer, not 1305 Washington. Pfaltzgraff recollected that Orr did not begin living with her at the Washington Avenue house until just prior to the second search warrant's execution on June 1, 2007. Finally, Pfaltzgraff proffered that she would have testified that she has never seen or met Christofferson at her house, nor has she seen Orr sell drugs to Christofferson or anyone else.

Having considered this proffer by Pfaltzgraff at the evidentiary hearing, the district court properly concluded that Cohn's decision not to call her was reasonable because "'the potential costs of calling the witness[ ] outweighed the potential benefits.'" (quoting *Staples*, 410 F.3d at 488). Undoubtedly, the government would have attacked Pfaltzgraff's credibility with the same effectiveness it did at her evidentiary hearing. On cross-examination at the evidentiary hearing, Pfaltzgraff had no explanation as to why Orr's state-issued identification listing the Washington Avenue home as his address, was recovered from the master bedroom dresser. Similarly, Pfaltzgraff was unable to account for Orr's tax records in her home which also listed the Washington Avenue property as his address, or further, why those tax records listed Pfaltzgraff's children as Orr's dependents. Finally, the government merely sampled the voluminous recordings of jailhouse phone conversations between Orr and Pfaltzgraff, to probe Pfaltzgraff regarding her comment to Orr that he should have gotten a job during the time he was under investigation.

Under these facts, "[b]ecause [Pfaltzgraff's] testimony was potentially damaging and would not have exonerated [Orr], counsel's decision not to call her to testify at [Orr's] trial was not objectively unreasonable." *Watkins*, 486 F.3d at 465 (citing *Strickland*, 466 U.S. at 688). Therefore, the district court did not abuse its discretion in denying Orr's new trial motion on these grounds.

B. *Orr's Motion in Limine and Objection to Hearsay Evidence*
1. *Orr's Motion in Limine*

On June 20, 2008, Orr filed his "Motion [in Limine] To Exclude Evidence of Burglary of Residence of Brayden Bergen." Therein, Orr sought to exclude evidence of the burglary of Mr. Brayden Bergen's house, asserting that "Defendant is not a suspect of that burglary and presenting such evidence would be more prejudicial than its probative worth." This burglary ultimately produced the stolen X-box which Orr accepted from Nelson in exchange for crack cocaine. The district court denied Orr's motion, and Orr now asserts that the district court erred in doing so.

A district court's denial of a motion in limine is reviewed only for abuse of discretion. *United States v. Blaylock*, 535 F.3d 922, 927–28 (8th Cir. 2008). Essentially, Orr's motion in limine was predicated on the theory that any evidence pertaining to the burglary was irrelevant under Federal Rule of Evidence 401 or, alternatively, that its probative value was substantially outweighed by its unfair prejudice in violation of Federal Rule of Evidence 403. For its part, the government maintained that evidence of the burglary was relevant and admissible because it was offered merely to explain how law enforcement's attention initially settled on Orr.

Because this is an arguably close question of evidence, we cannot conclude that the district court abused its discretion in allowing evidence of the burglary. Moreover, even assuming that the evidence was irrelevant or was otherwise inadmissible due to undue prejudice, this error was harmless. *See United States v. Parish,* 606 F.3d 480, 487 (8th Cir. 2010) ("Even if the district court erred in admitting the evidence, we will not reverse if the admission of the evidence was harmless."). As already stated, the jury heard ample evidence upon which to base its guilty verdict, and Orr cannot reasonably argue that, but for this evidentiary ruling, the trial's outcome might have differed.

## 2. *Allegedly Hearsay Evidence*

Similarly, the trial court did not err in admitting evidence of the burglary through Deputy Whitaker's testimony. Because Orr did not object to the evidence's introduction at trial, we need only review the district court's admission of the testimony for plain error. *United States v. Richardson*, 537 F.3d 951, 959 (8th Cir. 2008). As we have observed, an out-of-court statement is not offered for the truth of the matter asserted, and is thus not hearsay, when it is offered merely to show why police began surveilling an area or following a criminal suspect. *Parish,* 606 F.3d at 487–88. The government offered Deputy Whitaker's testimony regarding the burglary only as background to explain why police initiated their investigation of Orr. Thus,

the statement was not inadmissible hearsay because it was not offered to prove the truth of the matter asserted, i.e. that a house was in fact burglarized. Accordingly, the trial court did not plainly err in allowing Deputy Whitaker's testimony.

## C. *Retroactivity of the Fair Sentencing Act of 2010*

On September 2, 2010, Orr filed a pro se supplemental brief, urging this court to apply the newly enacted Fair Sentencing Act of 2010 retroactively to his case, and remand his case to the district court for resentencing. Generally, we do not consider pro se arguments raised on appeal by defendants who are represented by counsel. *United States v. Moore*, 481 F.3d 1113, 1114 n.2 (8th Cir. 2007). In any event, our precedents foreclose Orr's argument on this point, and therefore he is not entitled to the retroactive application of the Fair Sentencing Act of 2010 to his case.

Orr was tried between August 11 and August 13, 2008, and subsequently sentenced on November 12, 2009, to life imprisonment for Count 1 (Conspiracy to Distribute 50 Grams or More of Crack Cocaine), a mandatory minimum sentence under the Controlled Substances Act, Orr's statute of conviction. *See* 21 U.S.C. §§ 846, 841(b)(1)(A). On August 3, 2010, during the pendency of Orr's appeal, President Barack Obama signed into law the Fair Sentencing Act of 2010 (FSA), which reduced sentencing disparity between crack cocaine and powder cocaine offenses, lowering the statutory sentencing ratio from 100:1 to 18:1. Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010). Under the amended Act, the government would have had to prove Orr distributed 280 grams of crack cocaine instead of 50 in order to trigger a mandatory-minimum life sentence. *Id.* at § 2(a)(1). Orr now urges the court to retroactively apply this amendment to his case and remand for resentencing.

The federal savings statute, 1 U.S.C. § 109, governs whether penal legislation that either decriminalizes previously criminal conduct or lessens the punishment therefor applies retroactively. The federal savings statute provides in pertinent part, that

[t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.

1 U.S.C. § 109.

The federal Savings Statute "was enacted to overcome the common law rule that all pending prosecutions abate when a criminal statute is repealed." *Martin v. United States*, 989 F.2d 271, 273 (8th Cir. 1993) (citing *Warden v. Marrero*, 417 U.S. 653, 660 (1974)). To that end, the Savings Statute conditions the retroactivity of federal penal legislation intended to decriminalize or lessen the punishment for previously criminal acts, on Congress's express provision within the legislation for its retroactive application. That the FSA is technically an amendment of the Controlled Substances Act, and not a repeal *in toto*, is of no moment, because this court has held that "the general saving clause applies to both." *Martin*, 989 F.2d at 274.

Thus, as we have previously recognized, Congress expressed no desire in the FSA that the law be applied retroactively, and consequently the federal Savings Statute clearly forecloses Orr's argument for retroactive application. *See United States v. Brewer*, 624 F.3d 900, 909 n.7 (8th Cir. 2010) ("[B]ecause the Fair Sentencing Act contains no express statement that it is retroactive, . . . the 'general savings statute,' 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed."); *see also United States v. Brown*, No. 10-1791, 2010 WL 3958760, at *1 (8th Cir. Oct. 12, 2010) (unpublished) ("general savings statute, 1 U.S.C. § 109, requires application of penalties in place at time crime was committed unless new enactment expressly provides for its own retroactive application; Fair Sentencing Act of 2010 contains no express statement that it is retroactive and no such express intent

can be inferred from its plain language.") (quoting *United States v. Carradine*, No. 08-3220, 2010 WL 3619799, at \*4–5 (6th Cir. Sept. 20, 2010)).

III. *Conclusion*

Accordingly, we affirm.

_____