# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3184

_____

Patricio Guzman-Ortiz

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: October 21, 2016
Filed: February 27, 2017

_____

Before RILEY, Chief Judge, WOLLMAN and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

Patricio Guzman-Ortiz was convicted of conspiring to distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846.  This court affirmed his conviction and sentence along with those of a co-defendant on direct appeal.  See United States v. Chantharath, 705 F.3d 295, 298 (8th Cir. 2013).  Guzman-Ortiz then moved to vacate,

set aside, or correct his sentence pursuant to 28 U.S.C. § 2255(a). The district court[1] denied his request for post-conviction relief without granting an evidentiary hearing. Guzman-Ortiz appeals, arguing (1) he was unconstitutionally deprived of effective assistance of counsel, and (2) at a minimum, the district court should have held an evidentiary hearing. We disagree and affirm.

## I.    BACKGROUND[2]

Following his March 2010 arrest, Guzman-Ortiz and nine co-defendants were charged with knowingly and intentionally conspiring to distribute a controlled substance. Guzman-Ortiz and a co-defendant, Viengxay Chantharath, were tried jointly. See Chantharath, 705 F.3d at 298.

At trial, the government sought to prove the defendants were members of the same conspiracy to distribute methamphetamine. See id. at 298-300. In opening remarks, the government explained the jury would not hear "that these two defendants knew each other" because this "was not a small conspiracy involving just two people, but instead was a much larger conspiracy involving a variety of people, not all of whom knew each other, a conspiracy that was forced to evolve as members of that conspiracy were arrested." Evidence demonstrated Chantharath, who was distributing methamphetamine in Worthington, Minnesota, and Sioux Falls, South Dakota, became acquainted with co-defendant Aurelio Solorio in 2009 and began dealing to Solorio. See id. at 298. Later, Solorio started obtaining methamphetamine directly from Chantharath's supplier, Mario Maldonado. See id. In summer 2009, law enforcement began surveillance of a motel in Sioux Falls where Chantharath had

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, adopting the report and recommendation of the Honorable Veronica L. Duffy, United States Magistrate Judge for the District of South Dakota.

[2]A more complete version of the facts supporting the underlying conviction is set forth in Chantharath, 705 F.3d at 298-300.

allegedly been selling methamphetamine. See id. at 298-99. Chantharath was eventually arrested in connection with that surveillance, but was released in November 2009. Id. at 299. After his release, Solorio helped Chantharath get back in business by giving Chantharath methamphetamine to sell. Id. Chantharath was arrested one month later when law enforcement raided a motel room in Sioux Falls and Chantharath arrived at the room with 12.1 grams of methamphetamine on him. Id.

Guzman-Ortiz, on the other hand, was distributing methamphetamine in St. Cloud, Minnesota, and out of a "stash house" in Monticello, Minnesota. Id. In January 2010, Guzman-Ortiz met Solorio when Guzman-Ortiz happened to enter a bathroom in a Minneapolis nightclub and came upon Solorio using methamphetamine. Id. Guzman-Ortiz offered to get Solorio methamphetamine, and Solorio accepted. Id. Guzman-Ortiz and Solorio met again on three separate occasions. See id. at 299-300. On their final meeting, Guzman-Ortiz was following Solorio in a separate vehicle out of Sioux Falls on their way to Worthington when Guzman-Ortiz was pulled over. Id. at 300. Law enforcement recovered from Guzman-Ortiz's vehicle $29,000 in cash and a scale with white, powdery residue, and Guzman-Ortiz was arrested. Id. Later, law enforcement executed search warrants in Guzman-Ortiz's apartment and stash house and recovered a 9-millimeter pistol, a modified AK-47 rifle, an SKS rifle, and a 9-millimeter rifle. Id.

The jury found both defendants guilty of entering the charged conspiracy. The district court sentenced Guzman-Ortiz to 262 months imprisonment—later reduced to 210 months.[3] See U.S.S.G. § 2D1.1(c)(3). On direct appeal, we affirmed the

---

[3]At the time of sentencing, the quantity of methamphetamine the district court found attributable to Guzman-Ortiz resulted in a base offense level of 34. Amendment 782 to the United States Sentencing Guidelines (U.S.S.G.) retroactively reduced each rung of the drug quantity table in U.S.S.G. § 2D1.1(c) by two levels, therefore reducing Guzman-Ortiz's base offense level to 32 and the bottom of his amended guidelines range from 262 to 210 months imprisonment.

sufficiency of the evidence supporting Guzman-Ortiz's conviction, the application of a sentencing enhancement, and the substantive reasonableness of his sentence. See Chantharath, 705 F.3d at 301-02, 304-05.

In April 2014, asserting he was denied effective assistance of counsel in violation of his Sixth Amendment right under the United States Constitution, Guzman-Ortiz filed a pro se motion to vacate, set aside, or correct his sentence. See 28 U.S.C. § 2255(a). Guzman-Ortiz contended his counsel's performance was unconstitutionally deficient because his counsel failed to (1) cross-examine Solorio competently, "the supposed linchpin between Guzman-Ortiz and Chantharath, regarding the charge that Guzman-Ortiz and Chantharath were part of the same conspiracy"; (2) present a competent closing argument to the jury; and (3) challenge the drug quantities attributed to him at his sentencing hearing.[4] As a result, Guzman-Ortiz claimed the jury was left "with the incorrect but uncontested impression that Guzman-Ortiz, as charged, was part of a single and far larger drug trafficking conspiracy than was actually the case," and the district court sentenced Guzman-Ortiz at a higher base offense level due to incorrect drug quantity calculations.

Guzman-Ortiz's counsel submitted a sworn affidavit denying Guzman-Ortiz's claims. The government denied the allegations set forth in the petition and moved to dismiss. The petition was referred to a magistrate judge, who issued a comprehensive report and recommendation proposing that the district court deny the § 2255 motion without an evidentiary hearing. Adopting the magistrate judge's report and recommendation, the district court decided no evidentiary hearing was necessary and denied Guzman-Ortiz's claim to relief. Guzman-Ortiz subsequently moved for a certificate of appealability, see id. § 2253(c)(2); Fed. R. App. P. 22(b)(1), which the

---

[4]Before the district court, Guzman-Ortiz also argued his counsel was ineffective on Guzman-Ortiz's direct appeal, but he has not raised that basis in his appeal to our court.

-4-

district court granted. Guzman-Ortiz appeals. See 28 U.S.C. §§ 1291, 2253(a) (appellate jurisdiction over a final order in a § 2255 proceeding).

## II.    DISCUSSION

"When addressing post-conviction ineffective assistance claims brought under § 2255, we review the ineffective assistance issue de novo and the underlying findings of fact for clear error." United States v. Regenos, 405 F.3d 691, 692-93 (8th Cir. 2005). A district court's denial of an evidentiary hearing on a § 2255 motion is reviewed for an abuse of discretion. See id. at 693.

To demonstrate he received ineffective assistance of counsel, Guzman-Ortiz must show (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687-90 (1984). Demonstrating deficient performance requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). To satisfy the second prong of Strickland, the defendant is required to show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Hill v. Lockhart, 474 U.S. 52, 57 (1985) (quoting Strickland, 466 U.S. at 694).

At the heart of Guzman-Ortiz's claim is his assertion that his attorney should have focused his defense strategy around attacking the existence of the conspiracy and arguing, to the extent Guzman-Ortiz *was* involved in the distribution of

methamphetamine, he was involved only in a smaller, Minnesota-based drug distribution network unrelated to the charged conspiracy. Contending Solorio was his only connection to the conspiracy, Guzman-Ortiz asserts it was "essential" his counsel's cross-examination of Solorio forced Solorio "into admitting that Solorio's relationship with Guzman-Ortiz only began once Solorio's connection with Chantharath had ended."

Guzman-Ortiz's counsel's cross-examination strategy was to undercut the government witnesses' credibility by (1) exposing their history with drugs and reduced ability to recall, and (2) attacking their self-serving incentive to testify. In his cross-examination of Solorio, counsel covered Solorio's history with drug use and his prior drug convictions. Counsel also questioned Solorio about the life sentence Solorio would have faced had he gone to trial, his plea deal with the government, his duty under that deal to cooperate with the government, and the sentence reduction the government would award him as a result of his cooperation at trial.

The district court concluded cross-examination of Solorio was not deficient because "[w]ith or without that testimony, the jury could find that Guzman-Ortiz was a part of the conspiracy because he entered into the conspiracy with one of the co-conspirators." Guzman-Ortiz claims the district court "misses the point" because the "jury would have been much more likely to accept the defense theory" had counsel cross-examined Solorio on the varying timelines. Guzman-Ortiz merely speculates this line of questioning would have influenced the jury. On direct appeal we made clear that, even absent evidence Guzman-Ortiz and Chantharath "knew one another or were aware of each other's role in the conspiracy," the evidence presented at trial was sufficient to support the jury's finding that Guzman-Ortiz and Chantharath were involved "in a single overall conspiracy to distribute methamphetamine." Chantharath, 705 F.3d at 301. The point Guzman-Ortiz wanted to make was not lost on the jury because Chantharath's attorney, who had the first opportunity to cross-examine Solorio, actually made that point by questioning Solorio about when

-6-

Solorio's relationship with Chantharath ended and when his relationship with Guzman-Ortiz began. Solorio admitted that by the time he met Guzman-Ortiz in January 2010, he was no longer dealing with Chantharath.

Attacking a witness's credibility and motives are reasonable cross-examination strategies. In this case, they were not the only available strategies, and perhaps not the most effective, but they were not "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; cf. United States v. Orr, 636 F.3d 944, 952 (8th Cir. 2011) (recognizing two instances in which our court has held counsel's cross-examination was incompetent: (1) "'allow[ing] inadmissible devastating evidence before the jury,'" and (2) "'fail[ing] to cross-examine a witness who made grossly inconsistent prior statements'" (quoting Whitfield v. Bowersox, 324 F.3d 1009, 1017 (8th Cir.), vacated in part on other grounds, 343 F.3d 950, 950 (8th Cir. 2003))). The choice to focus on "some issues to the exclusion of others" carries with it "a strong presumption that [counsel] did so for tactical reasons rather than through sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003). That presumption in favor of competent counsel applies with "particular force where a petitioner bases his ineffective-assistance claim solely on the trial record," as Guzman-Ortiz does here. Id. The district court did not err in ruling counsel's cross-examination was not constitutionally deficient.

Next, Guzman-Ortiz claims his counsel's closing argument was deficient for the same reason—because he failed to emphasize the utter disconnect between Guzman-Ortiz and Chantharath. "[D]eference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." Id. at 6. Accordingly, review of closing argument is "highly deferential" to counsel's chosen trial strategy. Id.

Although the major theme in Guzman-Ortiz's counsel's closing was the lack of credibility of the government's witnesses, counsel did argue that, to the extent the

jury believed Guzman-Ortiz had been involved in dealing methamphetamine, he was only involved in a separate, smaller conspiracy. Counsel also highlighted that no one had found Guzman-Ortiz in possession of methamphetamine and no witness affirmatively had connected Chantharath and Guzman-Ortiz. Counsel directed the jury's attention to juror instruction number five, which covered multiple conspiracies.[5] Counsel proclaimed that there was no "credible proof, much less credible proof beyond a reasonable doubt, that [Guzman-Ortiz] was distributing drugs with the particular conspiracy alleged by the Government. That's not a technicality. Look at Jury Instruction No. 5. That's the law." This was not a deficient closing argument.

Guzman-Ortiz also contends his counsel was incompetent because he failed to challenge the quantities of methamphetamine attributable to him for purposes of sentencing. See U.S.S.G. § 2D1.1(c)(3). Guzman-Ortiz inaccurately describes the record because his attorney *did* challenge the quantities attributable to him by objecting to Guzman-Ortiz's presentence report and renewing his objection at the sentencing hearing. While the district court overruled his objection and ultimately attributed 1,713.3 grams of methamphetamine to Guzman-Ortiz, the district court explained it gave Guzman-Ortiz "every benefit that was based on the testimony received," saying "if a person testified to a range, I always took the smaller range." Dismissing this argument as a basis for ineffective assistance of counsel, the district court commented that not only was counsel's strategy "not deficient," it was actually "an effective strategy." We agree.[6]

---

[5]The instruction stated, in part: "[I]f the United States has failed to prove beyond a reasonable doubt that the defendant was a member of the conspiracy which is charged, then you must find the defendant not guilty even though he may have been a member of some other conspiracy."

[6]Guzman-Ortiz also asserts his counsel should have challenged the quantities in cross-examination of the witnesses at trial. But counsel's trial strategy was to

Finally, it was not an abuse of discretion by the district court to forgo holding an evidentiary hearing before dismissing Guzman-Ortiz's § 2255 motion. A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) "the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." United States v. Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014) (citation omitted). In denying Guzman-Ortiz's request for an evidentiary hearing, the district court concluded Guzman-Ortiz's allegations "are either contradicted by the record or would not entitle him to relief." Review of the trial and sentencing transcripts demonstrates Guzman-Ortiz incorrectly portrayed the record in his challenges to his counsel's representation during closing argument and at the sentencing hearing; thus, no further factual development of his claims was necessary before determining those claims did not entitle Guzman-Ortiz to relief.

## III.  CONCLUSION

Because we agree with the district court's conclusion that Guzman-Ortiz was not deprived of his constitutional right to effective assistance of counsel, we affirm the dismissal of his § 2255 motion without further hearing.

———————————————

emphasize the untrustworthiness of the witnesses, and, as the government suggests, "additional cross questions regarding drug quantity might have yielded responses that only served to reinforce to the jury the number of times that Guzman-Ortiz was involved in drug transactions."